# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| THOMAS FRANCHINI of East Greenwich, Rhode Island | ) ) ) | |
| **Plaintiff** | ) ) | |
| V. | ) ) | CIVIL ACTION NO. 1:18-cv-00015-GZS |
| BANGOR PUBLISHING CO., INC. d/b/a BANGOR DAILY NEWS, a Maine corporation, MEG HASKELL of the State of Maine; MTM ACQUISITION, INC., d/b/a PORTLAND PRESS HERALD, a Maine corporation, EDWARD MURPHY of the State of Maine, GANNETT COMPANY, INC. d/b/a USATODAY, a Delaware corporation; DONOVAN SLACK of the District of Columbia; INVESTORS BUSINESS DAILY, INC. d/b/a Investors Business Daily and SALLY PIPES of the State of California | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | FIRST AMENDED COMPLAINT AND JURY TRIAL DEMAND |
| **Defendants** | ) | |

Plaintiff Thomas Franchini, by and through his undersigned attorneys, hereby files suit against the above-captioned Defendants, and in support thereof, states as follows.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action against Defendants pursuant to 42 U.S.C. §1332 insofar as there exists a complete diversity of citizenship between the parties hereto and the amount in controversy exceeds the jurisdictional sum.

2. Venue is properly vested in this Court because certain of the acts complained of conduct occurred within the jurisdiction of this District (specifically, Cumberland and Penobscot

1

Counties, Maine), certain of the parties-defendant are legally situated within the State of Maine, certain of the parties-defendant who are not legally situated within the State of Maine conduct regular and significant business within this District and those parties-defendant who are neither legally situated within the State of Maine nor conduct regular and significant business within this District are subject to the jurisdiction and venue of this Court as a party to ancillary and pendent claims.

## PARTIES

3. Plaintiff Thomas Franchini is an individual and a resident of East Greenwich, Rhode Island.  At all times relevant, Franchini has been a board-certified podiatrist with licensure in Connecticut, Rhode Island, New York and Massachusetts, with expired licenses in good standing in the District of Columbia, Vermont and Maine. During times relevant, Franchini has been principally resident in Maine.

4. Defendant Bangor Publishing Company, Inc. d/b/a the Bangor Daily News is a corporation organized and existing under the virtue of the laws of the State of Maine, with a principal place of business in Bangor, Maine.

5. Defendant Meg Haskell is an individual and, upon information and belief, a resident of the State of Maine.

6. Defendant MTM Acquisition, Inc. d/b/a MaineToday Media and the Portland Press-Herald is a corporation organized and existing under the virtue of the laws of the State of Maine, with a principal place of business in the State of Maine.

7. Defendant Edward D. Murphy is an individual and, upon information and belief, a resident of the State of Maine.

8. Defendant Gannett Company, Inc. d/b/a USAToday is a corporation organized and existing under the virtue of the laws of the State of Delaware, with a principal place of business in McLean, Virginia.

9. Defendant Donovan Slack is an individual and, upon information and belief, a resident of the District of Columbia.

10. Defendant Investor's Business Daily, Inc. d/b/a Investor's Business Daily is, upon information and belief, a corporation organized and existing under and by virtue of the laws of the State of California, with a principal place of business in Los Angeles, California.

11. Defendant Sally Pipes is an individual and, upon information and belief, a resident of the State of California.

## FACTS RELEVANT TO ALL COUNTS

12. At times relevant hereto Franchini was a podiatrist employed by the Department of Veterans Affairs, VA Maine Healthcare System, at Togus (Augusta), Maine. Franchini has been a podiatrist for more than 27 years.  Franchini had conducted or participated in more than 5,700 surgical procedures during his career.  Franchini has never been disciplined by any state or other licensure authority.  Franchini has never suffered the loss, revocation or termination of any hospital or surgical privileges.

13. Franchini was an officer in the United States Navy, in active duty between August 1992 and August 2002 and in reserve duty between August 2002 and August 2008.  Franchini received an Honorable Discharge respecting his Naval service.  During that entire period, Franchini served as a surgical podiatrist.

14. During Franchini's aforesaid period of service in the United States Navy, Franchini conducted or participated in over 4,800 surgeries, and received multiple accolades and commendations, including personal commendations from Senators and a sitting Vice President, two Navy Commendation medals and one Navy Achievement medal, without any tort claim or claim of sub-standard care or performance against him.

15. Franchini served as a clinical professor on the medical staff at Fletcher Allen Medical Center in Burlington, Vermont between 2002 and 2003.

16. During Franchini's aforesaid service with the Fletcher Allen Medical Center, Franchini conducted or participated in approximately 100 surgeries without any tort claim or claim of sub-standard care or performance against him.

17. Franchini served on the medical staff of the VA Surgical Hospital, Togus between April 2004 and November 2010.

18. During Franchini's aforesaid service at VA Togus, Franchini conducted or participated in approximately 580 surgeries. During the course of such service, Franchini received multiple commendations and employment grade promotions for GS-12 to GS-15.

19. Simultaneous with Franchini's aforesaid association with VA Togus, Franchini worked at Maine Medical Center, Portland, Maine and at Mercy Hospital, Portland, Maine.

20. During Franchini's aforesaid service with the Maine Medical Center and Mercy Hospital, Franchini conducted or participated in approximately 95 surgeries without any tort claim or claim of sub-standard care or performance against him.

21. In approximately April, 2010, in the course of a review of Franchini's note-taking and preparation of medical records, Franchini was criticized for the brevity of his procedure notes. Franchini was asked to cease performing surgeries.

22. Franchini resigned from VA Togus effective November 8, 2010.

23. At the time of such resignation, neither formal disciplinary charge nor investigation, other than with regard to the brevity of his file or procedure notes, was pending against Franchini.

24. Between 2010 and 2011, VA Togus raised issues with 25 surgical files representing procedures conducted or participated in by Franchini.

25. All of those procedures were subsequently reviewed by independent podiatrists and found to be appropriate.

26. Subsequent to 2012, VA Togus and/or representatives of that authority has/have accused Franchini of numerous cases of substandard performance of procedures.

27. In fact, such allegations were false and baseless and have never been objectively-appropriately validated.

28. As set forth more fully below, without conducting appropriate inquiry or investigation and/or otherwise negligently, the parties-defendant herein, publications and journalists, have published, in whole or part, falsehoods arising, *inter alia,* from the allegations of the VA.

29. Such publication has presented and conveyed a grossly false, unfair and inaccurate portrayal of Franchini's practice, history and qualification, as well as the circumstances arising from his tenure at VA Togus.

30. Franchini has been profoundly damaged by the aforesaid publication(s) including, the loss of then-present and future employment and future earnings, in an amount estimated to exceed $3.4 million, public shame and disapproval, severe and unrelenting emotional distress and otherwise.

## COUNT 1
## (AGAINST BANGOR PUBLISHING COMPANY AND MEG HASKELL)
## (LIBEL AND/OR DEFAMATION)

31. Plaintiff Franchini repeats and realleges each and every allegation contained in Paragraphs 3-30 above, inclusive, with the full force and effect as if set forth fully herein.

32. On or about October 27, 2017, Defendants Bangor Publishing Company, Inc. d/b/a the Bangor Daily News and/or Haskell caused to be published a certain article entitled "Vet Harmed at Togus".

33. The said article was false and libelous and/or defamatory in the following respects: The article stated that Franchini's separate from VA Togus was forced. The article stated that 88 vets "…suffered under the care of… Franchini". The article stated that Franchini had "botched" certain procedure(s) performed or participated in respecting Jim Barrows, that he subsequently "realized" that he had made an error/errors and implied that his care provided to Barrows and numerous other patients was negligent.

34. The said article's offensive content expressly and implicitly misstated the content of the VA Togus reportage and/or a prior USAToday report upon which it was purportedly predicated.

35. The said article's offensive content was neither truthful nor otherwise privileged.

36. The libelous/defamatory content described above damaged Franchini's reputation in a manner which would adversely affect his fitness for the proper conduct of his profession (podiatry) and, accordingly, constitutes "special harm" under applicable law.

## COUNT 2
### (AGAINST MTM ACQUISITION, INC. AND EDWARD MURPHY)
### (LIBEL AND/OR DEFAMATION)

37. Plaintiff Franchini repeats and realleges each and every allegation contained in Paragraphs 3-30 and 32-36 above, inclusive, with the full force and effect as if set forth fully herein.

38. On or about October 1, 2017, Defendants MTM Acquisition, Inc. d/b/a Portland Press-Herald and/or Murphy caused to be published a certain article entitled "Maine Veterans Given Substandard Care are Told It's Too Late to Sue".

39. The said article was false and libelous and/or defamatory in the following respects: The article stated that Franchini was told to "step down or he'd be fired in early 2010". The article stated that Franchini had performed in a substandard or negligent fashion with respect to certain procedure(s) performed or participated in respecting April Wood, Kenneth Myrick, Timothy Mansir, and Mark Prescott and others and/or that the VA had so determined.

40. The said article's offensive content expressly and implicitly misstated the content of the VA Togus reportage upon which it was purportedly predicated.

41. The said article's offensive content was neither truthful nor otherwise privileged.

42. The libelous/defamatory content described above damaged Franchini's reputation in a manner which would adversely affect his fitness for the proper conduct of his profession (podiatry) and, accordingly, constitutes "special harm" under applicable law.

## COUNT 3
## (AGAINST GANNETT COMPANY AND DONOVAN SLACK)
## (LIBEL AND/OR DEFAMATION)

43. Plaintiff Franchini repeats and realleges each and every allegation contained in Paragraphs 3-30 and 38-42 above, inclusive, with the full force and effect as if set forth fully herein.

44. On or about October 11, 2017, Defendants Gannett and/or Slack caused to be published a certain article entitled "VA Conceals Shoddy Care and Health Workers' Mistakes".

45. The said article was false and libelous and/or defamatory in the following respects: The article stated that the VA had concluded that Franchini had "made mistakes that harmed veterans" in "88 cases". The article stated that the VA had allowed Franchini to "quietly resign and move on to private practice", thereby implying that some manner of formal investigation or knowledge of substandard/negligent care existed with VA Togus at the time of Franchini's departure. The article stated that Franchini had "retired under investigation", thereby implying that some manner of formal investigation or knowledge of substandard/negligent care existed with VA Togus at the time of Franchini's departure. The article stated that the VA had placed Franchini "on leave after finding problems with a small sample of his cases in 2010", thereby implying that some manner of formal investigation or knowledge of substandard/negligent care existed with VA Togus at the time of Franchini's departure. The article stated that Franchini had left the VA "under investigation", thereby implying that some manner of formal investigation or knowledge of substandard/negligent care existed with VA Togus at the time of Franchini's departure. The article stated that Franchini had acted in a substandard or negligent fashion respecting certain procedure(s) performed or participated in and implied that his care

provided to patients was negligent.

46. The said article's offensive content expressly and implicitly misstated the content of the VA Togus reportage upon which it was purportedly predicated.

47. The said article's offensive content was neither truthful nor otherwise privileged.

48. The libelous/defamatory content described above damaged Franchini's reputation in a manner which would adversely affect his fitness for the proper conduct of his profession (podiatry) and, accordingly, constitutes "special harm" under applicable law.

## COUNT 4
### (AGAINST INVESTOR'S BUSINESS DAILY AND SALLY PIPES)
### (LIBEL AND/OR DEFAMATION)

49. Plaintiff Franchini repeats and realleges each and every allegation contained in Paragraphs 3-30 and 44-48 above, inclusive, with the full force and effect as if set forth fully herein.

50. On or about December 22, 2017, Defendants Investor's Daily and Pipes caused to be published a certain article entitled "VA Negligence is Killing Veterans".

51. The said article was false and libelous and/or defamatory in the following respects: The article stated that Franchini "botched 88 procedures", including two specifically highlighted - a severed tendon and a failed fusion which led to an amputation. The article stated that Franchini was "allowed" to resign and return to private practice, thereby implying that some manner of formal investigation or knowledge of substandard/negligent care existed with VA Togus at the time of Franchini's departure.

52. The said article's offensive content expressly and implicitly misstated the content of the VA Togus reportage upon which it was purportedly predicated.

53. The said article's offensive content was neither truthful nor otherwise privileged.

54. The libelous/defamatory content described above damaged Franchini's reputation in a manner which would adversely affect his fitness for the proper conduct of his profession (podiatry) and, accordingly, constitutes "special harm" under applicable law.

## COUNT 5
### (AGAINST GANNETT COMPANY AND DONOVAN SLACK)
### (FRAUDULENT OR NEGLIGENT MISREPRESENTATION)

55. Plaintiff Franchini repeats and realleges each and every allegation contained in Paragraphs 3-30 and 43-48 above, inclusive, with the full force and effect as if set forth fully herein.

56. During the course of Gannett/Slack's investigation and or preparation for the article discussed above in Count 3, Gannett/Slack requested that Franchini meet with Slack for an interview. The meeting and interviewed occurred at the Intercontinental Hotel in New York, New York.

57. Franchini agreed to the interview subject to the condition, *inter alia*, that Gannett/Slack not identify the location of his then-current employment.

58. Gannett/Slack represented and committed to Franchini in advance of the interview that the location of his then-current employment would not be identified in the resulting article.

59. Same was re-confirmed during the interview itself when Franchini became alarmed that Slack had in her possession, during the interview, a copy of his Massachusetts licensure application, a document which Franchini believed to be confidential and privileged, and with respect to which Slack refused to disclose how she obtained same.

60. Franchini relied upon the foregoing representation and commitment in agreeing to the interview and in continuing with the interview once it had commenced and he became aware of Slack's possession of his Massachusetts licensure application.

61. At the time of the aforesaid representation/commitment, Gannett/Slack knew that the said representation/commitment was false and that the purpose of the said representation/commitment was to fraudulently and wrongfully induce Franchini's detrimental reliance upon same, in order to obtain the desired interview.

62. Alternatively, Gannett/Slack knew or should have known in the exercise of due care that the said representation/commitment was false.

63. The said representation/commitment was false. In the subject article, Gannett/Slack did identify the location of Franchini's then-current employment.

64. By virtue of Gannett/Slack's aforesaid fraudulent or negligent misrepresentation, Franchini has been damaged.

65. Gannett/Slack has acted with malice towards Franchini or, alternatively, the actions of Gannett/Slack have been of such an egregious and outrageous character and nature that malice can be inferred therefrom or malice is implied therein.

### COUNT 6
### (AGAINST ALL DEFENDANTS)
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

66. Plaintiff Franchini repeats and realleges each and every allegation contained in Paragraphs 3-65 above, inclusive, with the full force and effect as if set forth fully herein.

67. By virtue of the foregoing, Defendants have breached their duty to Franchini to exercise due care respecting and to fully investigate and to publish accurate facts regarding him and to not libel and/or defame him.

68. Defendants' breaches of their duty of due care to Franchini, as well as their failure(s) to fully investigate and to publish accurate facts regarding him and to not libel and/or defame him were by its nature certain or substantially certain to cause severe emotional distress to Franchini.

69. By virtue of the said conduct, Franchini has suffered severe emotional distress.

70. The said emotional distress was so severe that no reasonable individual could be expected to endure it.

71. By virtue of the foregoing infliction of emotional distress, Franchini has been damaged.

**WHEREFORE**, by reason of the foregoing, Plaintiff Thomas Franchini prays for judgment on the Complaint and against Defendants, and each of them, for his compensatory damages as are reasonable in the premises, for punitive damages against Defendants Gannett Company, Inc. and Slack, for his reasonable attorney's fees and costs, and for such other and further and additional relief as the Court deems just and appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

DATED at Lewiston, Maine this 5th day of February, 2018.

/s/David Van Dyke, Esq.
Lynch & Van Dyke
261 Ash Street - P.O. Box 116
Lewiston, Maine 04243-0116
Tel. 207-786-6641
dvandyke@hlrvd.com

*Attorney for Plaintiff Thomas Franchini*

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 5, 2018 I electronically filed the foregoing FIRST AMENDED COMPLAINT with the United States Federal Court by using the ECF system. I further certify that same shall be timely mailed by United States Postal Service to the following counsel whose involvement in this matter have been made known to me:

Bruce E. H. Johnson, Esq.
Davis Wright Tremaine LLP
1201 Third Avenue
Suite 2200
Seattle, WA 98101-3045
(Counsel for original Defendant Blethen Maine Newspapers)

Bernard J. Kubetz, Esq.
Eaton Peabody
80 Exchange Street
PO Box 1210
Bangor, ME 04402-1210
(Counsel for Defendants Bangor Publishing Company and Meg Haskell)

<u>/s/ David Van Dyke, Esq.</u>

Lynch & Van Dyke, P. A.
261 Ash Street - P.O. Box 116
Lewiston, Maine 04243-0116
Tel. 207-786-6641
dvandyke@HLRVD.com