# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| THOMAS FRANCHINI, | ) |
|             Plaintiff, | ) ) ) |
| v. | ) Docket no. 1:18-cv-00015-GZS ) |
| BANGOR PUBLISHING CO. INC. et al., | ) ) ) ) |
|             Defendants. | ) |

## ORDER ON MOTION TO DISMISS

Before the Court is Defendant Sally Pipes' Motion to Dismiss (ECF No. 77). For the reasons explained herein, the Court GRANTS IN PART and DENIES IN PART the Motion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Thomas Franchini filed the operative Complaint (ECF No. 6) in this case on February 6, 2018. As relevant here, Franchini alleges that "[o]n or about" December 22, 2017, Investor's Business Daily ("IBD") and Sally Pipes "caused to be published" an article entitled "VA Negligence is Killing Veterans." (Compl. at PageID # 56.) That article (the "IBD Article") states, among other things, that, while he was employed as a podiatrist at the VA Maine Healthcare System at Togus in Augusta, Maine ("VA Togus"), Franchini "botched 88 procedures." (Id.) It also asserts that VA Togus later "allowed" Franchini to resign. (Id.) According to Franchini, this implies that VA Togus had initiated "some manner of formal investigation" into his care by the time he departed. (Id.) Franchini maintains that the above statements are false and defamatory because: (1) he never provided "substandard" care at VA Togus; and (2) when he resigned from

VA Togus in November 2010, the VA had neither begun an investigation into his care nor accused him of substandard care. (Id. at PageID # 52.)

Turning to procedural history, Franchini's original counsel passed away on February 23, 2018. Thereafter, the Court held a hearing on April 9, 2018, and granted Plaintiff thirty days to secure replacement counsel (ECF No. 23). Following two extensions (ECF Nos. 27 & 31), new counsel entered an appearance for Plaintiff in July 2018. (See ECF No. 34.) Franchini's new counsel (hereinafter, "Franchini's counsel") then filed a Motion to Extend Time to file an opposition to Defendants' various dispositive motions (ECF No. 38). The Court granted that Motion, imposing a response deadline of August 31, 2018, and Franchini filed his Opposition on August 30, 2018. Therein, Franchini's counsel acknowledged that Pipes remained "unserved." (Pl. Opp. (ECF No. 41), PageID # 217.) Four months later, on January 18, 2019, Franchini filed a Motion to Extend Time to serve Pipes (ECF No. 50), which the Court granted. In its Order, the Court noted that although Franchini had not shown "good cause" for the length of the service delay—as of January 18, 2019, it had been over 340 days since Plaintiff filed the Amended Complaint—several factors, including judicial efficiency, favored extension. (Order on Motion to Extend (ECF No. 54), PageID #s 347-48.) The Order also stated that Franchini "shall effect service" on Pipes by April 29, 2019. (Id. at PageID # 348.) Despite this, Franchini's counsel admits that Pipes did not receive proper service until June 14, 2019. (Pl.'s Resp. to Pipes' Mot. (ECF No. 81), PageID # 494; Aff. of Service (ECF No. 80), PageID # 468-69.)

Notably, this belated service was not the first time that Franchini's counsel failed to adhere to a Court-ordered deadline. On April 16, 2019, the Court ordered expedited briefing regarding the impact of a notice of appeal filed by Co-Defendant IBD. Franchini's counsel failed to comply with that briefing schedule by filing a response at 6:25 p.m. on April 25, 2019, which was after the

noon deadline and after the Court had already issued its Order (ECF No. 66). As a result, on April 26, 2019, the Court issued an Order (ECF No. 69) striking Franchini's belated response.

On May 23, 2019, Pipes, still then awaiting proper service, filed the instant Motion to Dismiss. The Motion seeks dismissal of all claims against Pipes on the grounds that: (1) she is not subject to the Court's personal jurisdiction; (2) Plaintiff failed to properly serve her with process; and (3) the suit violates the Maine and California anti-SLAPP statutes. Fed. R. Civ. P. 12(b)(2) & (5); 14 M.R.S.A. § 556; Cal. Civ. Proc. Code § 425.16.

## II. LEGAL STANDARD

"When a court's jurisdiction is contested" under Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden of proving that jurisdiction lies in the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). "To establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014). "Because the Law Court has deemed Maine's long-arm statute coextensive with the permissible exercise of personal jurisdiction under the Due Process Clause of the Fourteenth Amendment, the due process inquiry controls in the present case." Lucerne Farms v. Baling Techs., Inc., 226 F. Supp. 2d 255, 257 (D. Me. 2002).

There are three recognized standards for determining whether the exercise of personal jurisdiction is lawful: the prima facie standard, the preponderance standard, and the likelihood standard. Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997); see Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145-47 (1st Cir. 1995) (outlining standards and circumstances under which they apply). Where, as here, the Court makes a jurisdictional ruling

without holding an evidentiary hearing, the prima facie standard applies. Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008).

Under that standard, the "inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Id. "It is not enough for [the plaintiff] to rely on unsupported allegations in [the] pleadings. Rather, [the plaintiff] must put forward evidence of specific facts to demonstrate that jurisdiction exists." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (internal citations and quotations omitted). In assessing this showing, a court must credit all "properly documented" proffers and "construe them" in the best light for the plaintiff. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (internal citations and quotations omitted).

District courts have "broad discretion" in deciding requests for jurisdictional discovery. United States v. Swiss. Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2010). To succeed in such a request, a plaintiff must demonstrate a "colorable" claim of personal jurisdiction and "present facts to the court which show why jurisdiction would be found if discovery were permitted." Swiss Am. Bank, Ltd., 274 F.3d at 626; see Hopkins v. Yi, No. 4:18-cv-40197-TSH, 2019 WL 3547085, at *9 (D. Mass. May 31, 2019) (rec. dec., aff'd June 25, 2019) (quoting BLACK'S LAW DICTIONARY (10th ed. 2014)) (defining a "colorable claim" as one "that is legitimate and that may reasonably be asserted, given the facts presented and the current law"). "Failure to allege specific contacts, relevant to establishing personal jurisdiction, in a jurisdictional discovery request can be fatal to that request." Swiss Am. Bank, Ltd., 274 F.3d at 626-27.

### III.  DISCUSSION

The Court holds that dismissal of all claims against Pipes is warranted due to lack of personal jurisdiction and failure to properly serve process. See Fed. R. Civ. P. 12(b)(2) & (5).

First, under Rule 12(b)(2), Plaintiff has neither met his burden of establishing the Court's personal jurisdiction over Pipes, nor demonstrated a claim of jurisdiction that would justify jurisdictional discovery. Second, under Rule 12(b)(5), Plaintiff, without "good cause," failed to properly serve Pipes. Ascher v. Duggan, 988 F. Supp. 2d 99, 103 (D. Mass. 2013) (internal citations and quotations omitted).

### A. Personal Jurisdiction

On the record presented, Plaintiff has not carried his burden as to personal jurisdiction. Simply put, he has failed to "put forward evidence" establishing such jurisdiction over Pipes. A Corp., 812 F.3d at 58 (internal citations and quotations omitted).

There are two types of personal jurisdiction: general and specific. Pritzker v. Yari, 42 F.3d 53, 59 (1st Cir. 1994). "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). Specific personal jurisdiction exists where the plaintiff can show that "(1) [the] claim[s] directly arise[] out of or relate[] to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum . . . ; and (3) the exercise of jurisdiction is reasonable. Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 7 (1st Cir. 2018).

Initially, Plaintiff has not even alleged facts, let alone presented specific evidence, suggesting that Pipes has engaged in "continuous and systematic activity" in Maine. 163 Pleasant St. Corp., 960 F.2d at 1088. His claims against Pipes thus cannot be grounded in the Court's general personal jurisdiction. See Pritzker, 42 F.3d at 60 (declining to find general personal

jurisdiction where "[n]othing in the record . . . suggest[ed] that [the defendant] engaged within [the forum] in continuous and systematic activity").

Plaintiff's specific personal jurisdiction showing is also deficient as it fails to clear the "relatedness" hurdle. C.W. Downer & Co., 771 F.3d at 66; see Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018) (noting that "[f]ailure to make any" of the three specific personal jurisdiction showings "dooms any effort to establish" such jurisdiction). "Here, plaintiff['s] claims all sound in tort, so to assess relatedness" the Court looks to whether "the plaintiff has established cause in fact (i.e., the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)." Scottsdale Capital Advisors Corp., 887 F.3d at 20-21 (internal citations and quotations omitted).

In Maine, the tort of defamation requires the plaintiff to demonstrate, among other things, that the defendant communicated the allegedly defamatory material to a third party.[1] Lester v. Powers, 596 A.2d 65, 69 (1991) (citing Restatement (Second) of Torts § 558). Thus, to establish "cause in fact" and "legal cause" here, Plaintiff must proffer some evidence permitting the inference that the allegedly defamatory material reached a third party in the forum. See Scottsdale Capital Advisors Corp., 887 F.3d at 19-22 (dismissing case for lack of personal jurisdiction where the plaintiff failed to show that any third party in the forum read the article at issue). Although Plaintiff alleges that Pipes "caused [the IBD Article] to be published" (Compl. at PageID # 56), he has not presented any evidence that IBD or Pipes sent the IBD Article to Maine or that a third party in Maine ever "apprehended" it. Scottsdale Capital Advisors Corp., 887 F.3d at 22. As a result,

---

[1] Although Franchini also raises a claim of negligent infliction of emotional distress ("NIED") against Pipes (Count VI), that claim is based on the publication of the allegedly defamatory material and, therefore, is subsumed into the defamation claim. See Veilleux v. Nat'l Broad. Co., 206 F.3d 92, 129 (1st Cir. 2000) (noting that "under Maine law" NIED cannot be premised on the alleged publication of defamatory content).

6

Plaintiff has not "proffered evidence . . . sufficient to support findings of all facts essential to" specific personal jurisdiction. Phillips, 530 F.3d at 26.

Likely recognizing these deficiencies, Plaintiff requests jurisdictional discovery relating to IBD and Pipes' "business dealings, contacts, data, subscriptions, 'hits,' [and] emails." (Pl. Opp. (ECF No. 81), PageID # 478). He asserts that discovery is necessary because the relevant information is "exclusively" in IBD and Pipes' possession. (Id. at PageID # 479). However, such a scenario does not entitle a party to jurisdictional discovery. The plaintiff must still present a "colorable" claim of jurisdiction to the Court. Swiss Am. Bank, Ltd., 274 F.3d at 626. This Franchini has not done. Neither his complaint nor his discovery request contain any allegations that, if supported, would cure the deficiencies in his claims on general or personal jurisdiction described above. This "[f]ailure to allege specific contacts, relevant to establishing personal jurisdiction" is "fatal" to Plaintiff's discovery request. Id. at 626-27. Accordingly, Plaintiff's claims against Pipes must be dismissed for lack of personal jurisdiction.[2]

**B. Service of Process**

Pipes is also entitled to dismissal under Rule 12(b)(5). Where a defendant requests dismissal for insufficiency of service under Rule 12(b)(5), the plaintiff bears "the burden of proving proper service." Rivera-Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992). Here, Plaintiff concedes that he failed to timely serve Pipes, but asserts that his service defects should be excused.

In cases involving untimely service, the district court conducts a two-part analysis: "[f]irst, the court must determine whether the plaintiff has met its burden of establishing 'good cause' for the untimely service, and second, if there is no good cause, the court has the discretion to dismiss

---

[2] The Court notes that it dismissed a similar case brought by Franchini against Pipes for lack of personal jurisdiction. See generally Franchini v. Pipes, No. 1:18-cv-00477-GZS, 2019 WL 2163604 (D. Me. May 17, 2019).

7

without prejudice or to extend the time period." Ascher, 988 F. Supp. 2d at 103 (internal citations and quotations omitted). Plaintiff fails as to both parts. First, Plaintiff has not shown "good cause" for the untimely service. According to one of Franchini's attorneys, Plaintiff failed to effect service on Pipes by the April 29 deadline because "the Complaint had inadvertently been omitted from the materials that had been sent for service." (Watro Decl., Ex. C to Pl.'s Opp. (ECF No. 81), PageID # 515.) The First Circuit has indicated that such attorney "inadvertence" does not amount to "good cause." De-La-Cruz-Arroyo v. Comm'r of Soc. Sec., No. 97-2378, 1998 WL 1285621, at *1 (1st Cir. May 27, 1998). Second, in view of all the circumstances, the Court is not convinced that it should exercise its discretionary authority to extend time for service.[3] See Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment (stating that "[r]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action").

Alternatively, the Court finds that Plaintiff's procedural missteps subject the claims against Pipes to dismissal under Rule 41(b). See, e.g., Cintron-Lorenzo v. Departamento de Asuntos del Consumidor, 312 F.3d 522, 526 (1st Cir. 2002) ("as part of its inherent power to manage its own docket" a district court "may dismiss a case sua sponte for any of the reasons prescribed in Fed. R. Civ. P. 41(b)"); Figueroa Ruiz v. Alegria, 896 F.2d 645, 647 (1st Cir. 1990) ("Rule 41(b) expressly authorizes a district court to dismiss a case with prejudice for failure of the plaintiff to prosecute or to comply with . . . any order of court") (internal citations and quotations omitted).

Here, Plaintiff flouted two Court-ordered deadlines that were "clear, direct, and to the point." Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 5 (1st Cir. 2002). First, Plaintiff filed a belated response to IBD's Motion to Stay, disregarding the Court's clear directive for expedited

---

[3] The Court also declines Plaintiff's request for an extension of time for service under Rule 6(b) because Plaintiff has not shown "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); see Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 392 (1993) (explaining that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect").

8

briefing. (Order on Issue of Stay (ECF No. 60), PageID # 397.) Second, Plaintiff neglected to serve Pipes by the Court's generously extended April 29, 2019, deadline. On top of these missed deadlines, Plaintiff also delayed service on Pipes for over 400 days after expiration of the ninety-day service window outlined in Fed. R. Civ. P. 4(m). The First Circuit has signaled that "[f]ailure to serve process within a reasonable time may amount to want of prosecution" under Rule 41(b). Caribbean Transp. Sys., Inc. v. Autoridad De Las Navieras De Puerto Rico, 901 F.2d 196, 197 (1st Cir. 1990) (internal citations and quotations omitted). In the context of this case, the Court concludes that Plaintiff left Pipes unserved for an "egregious" period of time. Vazquez-Rijos v. Anhang, 654 F.3d 122, 128 (1st Cir. 2011). The impact of these violations on the management of this docket warrants dismissal of the claims against Pipes under Rule 41(b).

**C. Application of Anti-SLAPP Statutes**

Having already concluded that Pipes is entitled to the dismissal relief she seeks under Rule 12(b), the Court is left to consider Pipes' arguments that: (1) the claims are subject to Maine's anti-SLAPP statute, 14 M.R.S.A. § 556, or California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16; and (2) she is entitled to an award of fees and costs under the applicable anti-SLAPP statute. In significant respects, these arguments track those made by IBD, Pipes' publisher and Co-Defendant, in its Special Motion to Dismiss the claims against it related to the IBD Article (ECF No. 17). The Court denied that Motion, (see Order on Pending Dispositive Motions (ECF No. 55), PageID #s 364-66), and IBD's appeal of that decision remains pending before the First Circuit. See Franchini v. Investor's Business Daily, Inc., 1st Cir. Docket # 19-1389.

"[A]s a general rule, the filing of a notice of appeal divests a district court of authority to proceed with respect to any matter touching upon, or involved in, the appeal." United States v. Brooks, 145 F.3d 446, 455 (1st Cir. 1998) (internal citations and quotations omitted); see Griggs

9

v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.") In the Court's assessment, this general rule applies here and divests the Court of jurisdiction regarding the application of any anti-SLAPP statute to the publication of the IBD Article. Therefore, to the extent Pipes' Motion seeks anti-SLAPP relief, the Court DENIES the Motion without prejudice.

## IV. CONCLUSION

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART Pipes' Motion to Dismiss (ECF No. 77). The Motion is GRANTED to the extent it seeks dismissal under Fed. R. Civ. P. 12(b) and DENIED in all other respects. In accordance with these rulings and Rule 41(b), all claims against Pipes are hereby DISMISSED without prejudice.

SO ORDERED.

                                              /s/ George Z. Singal
                                              United States District Judge

Dated this 5th day of September, 2019.