UNITED STATES DISTRICT COURT
DISTRICT OF MAINE
-----------------------------------X

THOMAS C. FRANCHINI, D.P.M.,          CIVIL ACTION NO.
                                      1:18-cv-00015-GZS
                    Plaintiff,

         -against-

                                      SECOND AMENDED COMPLAINT
BANGOR PUBLISHING CO., INC., d/b/a     AND JURY TRIAL DEMAND
BANGOR DAILY NEWS, MEG HASKELL; MTM
ACQUISITION, INC., d/b/a PORTLAND
PRESS HERALD,; EDWARD MURPHY; GANNETT
COMPANY, INC. d/b/a USATODAY,;
DONOVAN SLACK and INVESTORS BUSINESS
DAILY, INC., d/b/a INVSTORS BUSINESS
DAILY,

                         Defendants.
-----------------------------------X


        Plaintiff THOMAS C. FRANCHINI, D.P.M. by and through his

attorneys, BELAIR & EVANS LLP, hereby files suit against the

above-captioned Defendants, and in support thereof, alleges as

follows:

                    JURISDICTION AND VENUE

        1.    This Court has jurisdiction over this action against

Defendants pursuant to 42 U.S.C. §1332 insofar as there exists

complete diversity of citizenship between the parties hereto and

the amount in controversy exceeds the jurisdictional sum.

        2.    Venue is properly vested because certain of the acts

complained of conduct occurred with the jurisdiction of this

District Court (specifically, Cumberland and Penobscot Counties,

Maine), certain of the defendants are legally situated within the State of Maine, certain of the defendant who are not legally situated within the State of Maine conduct regular and significant business within this District and those defendants who are neither legal situated within the State of Maine nor conduct regular and significant business within this District are subject to the jurisdiction and venue of this Court as a party to ancillary and pendent claims.

## PARTIES

3.     Plaintiff THOMAS C. FRANCHINI, D.P.M. ("DR. FRANCHINI") is an individual and a resident of Essex, Connecticut.  At all times relevant, DR. FRANCHINI has been a board-certified surgical podiatrist with licensure in Connecticut, Rhode Island, New York and Massachusetts, with expired licenses in good standing in the District of Columbia, Vermont and Maine.  During times principally relevant, DR. FRANCHINI has been resident in Maine.

4.     Defendant Bangor Publishing Company, Inc. d/b/a the Bangor Daily News ("BANGOR") is a corporation organized and existing under the laws of the State of Maine, with a principal place of business in Bangor, Maine.

5.     Defendant Meg Haskell ("HASKELL") is an individual and, upon information and belief, a resident of the State of Maine.

6.     Defendant MTM Acquisition, Inc. d/b/a MaineToday Media and the Portland Press-Herald ("MTM") is a corporation organized

2

and existing under the laws of the State of Maine, with a principal place of business in the State of Maine.

7.   Defendant Edward D. Murphy ("MURPHY") is an individual and, upon information and belief, a resident of the State of Maine.

8.   Defendant Gannett Company, Inc. d/b/a USAToday ("GANNETT COMPANY") is a corporation organized and existing under the virtue of the laws of the State of Delaware, with a principal place of business in McLean, Virginia.

9.   Defendant Donovan Slack ("SLACK") is an individual and, upon information and belief, a resident of the District of Columbia.

10.   Defendant Investor's Business Daily, Inc. d/b/a Investor's Business Daily ("IBD") is, upon information and belief, a corporation organized and existing under and by virtue of the laws of the State of California, with a principal place of business in Los Angeles, California.

11.   Former Defendant Sally Pipes is an individual and, upon information and belief, a resident of the State of California.

## FACTS RELEVANT TO ALL COUNTS

12.   During times relevant hereto DR. FRANCHINI was a surgical podiatrist employed by the Department of Veterans Affairs, VA Maine Healthcare System, at Togus (Augusta), Maine ("VA Togus").   DR. FRANCHINI has been a surgical podiatrist for

3

more than 27 years.  DR. FRANCHINI had conducted or participated in more than 5,700 surgical procedures during his career.  DR. FRANCHINI has never been disciplined by any state or other licensure authority.  DR. FRANCHINI has never suffered the loss, revocation or termination of any hospital or surgical privileges.

13.  DR. FRANCHINI was an officer in the United States Navy, on active duty between August 1992 and August 2002 and in reserve duty between August 2002 and August 2008. During that entire period, Franchini served as a surgical podiatrist. At the time of his  Honorable Discharge, DR. FRANCHINI had attained the rank of Lieutenant Commander

14.  During DR. FRANCHINI's aforesaid period of service in the United States Navy, he conducted or participated in over 4,800 surgeries, and received multiple accolades and commendations, including personal commendations from Senators and a sitting Vice President, two Navy Commendation medals and one Navy Achievement medal, without any tort claim or claim of sub-standard care or performance against him.

15.  DR. FRANCHINI served as a clinical professor on the medical staff at Fletcher Allen Medical Center in Burlington, Vermont between 2002 and 2003.

16.  During DR. FRANCHINI's aforesaid service with the Fletcher Allen Medical Center, he conducted or participated in

4

approximately 100 surgeries without any tort claim or claim of sub-standard care or performance against him.

17. DR. FRANCHINI served on the medical staff of VA Surgical Hospital Togus ("VA Togus") between April 2004 and November 2010.

18. During DR. FRANCHINI's aforesaid service at VA Togus, he conducted or participated in approximately 580 surgeries.  During the course of such service, he had received multiple commendations and employment grade promotions from GS-12 to GS-15.

19. Simultaneous with DR. FRANCHINI's aforesaid association with VA Togus, he worked at Maine Medical Center, Portland, Maine and at Mercy Hospital, Portland, Maine.

20. During DR. FRANCHINI's aforesaid service with the Maine Medical Center and Mercy Hospital, he conducted or participated in approximately 95 surgeries without any tort claim or claim of sub-standard care or performance against him.

21. In approximately April 2010, in the course of a review of DR. FRANCHINI's note-taking and preparation of medical records at VA Togus, he was criticized for the brevity of his procedure notes.  He was asked to cease performing surgeries.

22. DR. FRANCHINI resigned from VA Togus effective November 8, 2010.

23. At the time of such resignation, neither formal disciplinary charge nor investigation, other than with regard to

the brevity of his file or procedure notes, was pending against Franchini.

24.  Between 2010 and 2011, VA Togus raised issues with 25 surgical files representing procedures conducted or participated in by DR. FRANCHINI.

25.  All of those procedures were subsequently reviewed by independent podiatrists and found to be appropriate.

26.  Subsequent to 2012, VA Togus and/or representatives of that authority has/have accused DR. FRANCHINI of numerous cases of substandard performance of procedures.

27.  In fact, such allegations were false and baseless and have never been objectively-appropriately validated.

28.  As set forth more fully below, without conducting appropriate inquiry or investigation and/or otherwise negligently, the parties-defendant herein, publications and journalists, have published, in whole or part, falsehoods arising, *inter alia*, from the aforesaid allegations of certain personnel of VA Togus.

29.  Such publication(s) have presented and conveyed a grossly false, unfair and inaccurate portrayal of DR. FRANCHINI's practice, history and qualification, as well as the circumstances arising from his tenure at VA Togus.

30. The defendants herein, publications and journalists, published these falsehoods after being provided with evidence causing them to entertain serious doubts regarding their truth.

31. The defendants herein also entertained serious doubts regarding the truth of DR. FRANCHINI's alleged firing by reason of the fact that the VA Togus investigation was launched years after DR. FRANCHINI's resignation.

32. The defendants other than GANNETT COMPANY and SLACK relied upon previous publications of the article by GANNETT COMPANY and SLACK on DR. FRANCHINI and re-published defamatory comments which further damaged DR, FRANCHINI.

33. DR. FRANCHINI has been profoundly damaged by the aforesaid publication(s) including, the loss of then-present and future employment and future earnings, in an amount estimated to exceed $3.4 million, public shame and disapproval, severe and unrelenting emotional distress and otherwise.

34. All defendants possessed information demonstrating, *inter alia*, that the proposed story was a product of fabrication, invention, unverified assertions, so inherently improbable that only a reckless person would put them into circulation and despite obvious reasons to doubt the veracity of the informant(s) upon

whom the article was based as well as the accuracy of reports of that person(s); thus constituting actual malice.

<u>COUNT 1</u>

<u>AGAINST BANGOR PUBLISHING COMPANY AND MEG HASKELL
FOR LIBEL AND/OR DEFAMATION</u>

35. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 3-34 above inclusive, with the full force and effect as if set forth fully herein.

36. On or about October 27, 2017, Defendants BANGOR and/or HASKELL caused to be published a certain article entitled "Vet Harmed at Togus."

37. The said article was false and libelous and/or defamatory in the following respects: The article stated that DR. FRANCHINI's separation from VA Togus was forced.  The article stated that 88 vets…suffered under the care of…Franchini."  The article stated that he had "botched" certain procedure(s) performed or participated in respecting Jim Barrows, which he subsequently "realized" that he had made an error/errors and implied that his care provided to Barrows and numerous other patients was negligent.

38. The said article's offensive content expressly and implicitly misstated the content of the VA Togus reportage and/or a prior USAToday report upon which it was purportedly predicated.

39. The said article's offensive content was neither truthful nor otherwise privileged.

40. The libelous/defamatory content described above damaged Franchini's reputation in a manner which would adversely affect his fitness for the proper conduct of his profession (surgical podiatry) and, accordingly, constitutes "special harm" under applicable law.

### COUNT 2

#### AGAINST MTM ACQUISITION, INC. AND EDWARD MURPHY
#### FOR LIBEL AND/OR DEFAMATION

41. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 3-39 above inclusive, with the full force and effect as if set forth fully herein.

42. On or about October 1, 2017, Defendants MTM and/or MURPHY caused to be published a certain article entitled "Maine Veterans Given Substandard Care are Told It's Too Late to Sue."

43. The said article was false and libelous and/or defamatory in the following respects: The article stated that DR. FRANCHINI was told to "step down or he'd be fired in early 2010." The article stated that he had performed in a substandard or negligent fashion with respect to certain procedure(s) performed or participated in respecting April Wood, Kenneth Myrick, Timothy

Mansir, and Mark Prescott and others and/or that the VA had so determined.

44.  The said article's offensive content expressly and implicitly misstated the content of the VA Togus reportage upon which it was purportedly predicated.

45.  The said article's offensive content was neither truthful nor otherwise privileged.

46.  The libelous/defamatory content described above damaged DR. FRANCHINI's reputation in a manner which would adversely affect his fitness for the proper conduct of his profession (podiatry) and, accordingly, constitutes "special harm" under applicable law.


## COUNT 3

### AGAINST GANNETT COMPANY AND DONOVAN SLACK FOR LIBEL AND/OR DEFAMATION

47.  Plaintiff repeats and realleges each and every allegation contained in Paragraphs 3-46 above inclusive, with the full force and effect as if set forth fully herein.

48.  On or about October 11, 2017, Defendants GANNETT and/or SLACK caused to be published a certain article entitled "VA Conceals Shoddy Care and Health Workers' Mistakes."

49.  The said article was false and libelous and/or defamatory in the following respects: The article stated that the VA had

concluded that DR. FRANCHINI had "made mistakes that harmed veterans" in "88 cases." The article stated that the VA had allowed DR> FRANCHINI to "quietly resign and move on to private practice," thereby implying that some manner of formal investigation or knowledge of substandard/negligent care existed with VA Togus at the time of DR. FRANCHINI's departure. The article stated that DR. FRANCHINI had "retired under investigation," thereby implying that some manner of formal investigation or knowledge of substandard/negligent care existed with VA Togus at the time of DR. FRANCHINI's departure. The article stated that the VA had placed DR. FRANCHINI "on leave after finding problems with a small sample of his cases in 2010," thereby implying that some manner of formal investigation or knowledge of substandard/negligent care existed with VA Togus at the time of his departure. The article stated that DR. FRANCHINI had left the VA "under investigation," thereby implying that some manner of formal investigation or knowledge of substandard/negligent care existed with VA Togus at the time of his departure. The article stated that DR. FRANCHINI had acted in a substandard or negligent fashion respecting certain procedure(s) performed or participated in and implied that his care provided to patients was negligent.

50. The said article's offensive content expressly and implicitly misstated the content of the VA Togus reportage upon which it was purportedly predicated.

51. The said article's offensive content was neither truthful nor otherwise privileged.

52. The libelous/defamatory content described above damaged DR. FRANCHINI's reputation in a manner which would adversely affect his fitness for the proper conduct of his profession (surgical podiatry) and, accordingly, constitutes "special harm" under applicable law.

## Actual Malice

53. The writing and publishing of the false and defamatory article described in paragraphs "42" through "45" hereof were written and published with "actual malice." Prior to the publication of her article defendant SLACK was already biased against DR. FRANCHINI, though this was unknown to DR. FRANCHINI at the time. Defendant SLACK, acting in the course and scope of her employment with the defendant GANNETT COMPANY, contacted DR. FRANCHINI in 2017 to solicit a meeting with him to discuss her upcoming article about him. She stated that if DR. FRANCHINI did not meet with her that her article would be terribly damning of him. This was the first information which DR. FRANCHINI received that his practice at VA Togus was of interest to a reporter

54. When SLACK met with DR. FRANCHINI she stated that he was "the worst doctor in the history of the VA," and that he had botched and harmed at least 88 patients in surgeries at VA Togus while he was practicing there. When asked how she could say that, SLACK replied that her information came from another physician who practiced with him and had recently reviewed his cases. DR FRANCHINI told SLACK that none of this was true. Continuing, DR. FRANCHINI told SLACK that: the physician she mentioned was an orthopedic surgeon who had: previously supervised DR. FRANCHINI; had always praised his work; operated together with DR. FRANCHINI on many patients; recruited DR. FRANCHINI, a surgical podiatrist, to operate with him on complex ankle surgeries rather than to enlist orthopedic surgeons for that position; had always given him positive fitness reports and was responsible for approving his rise from grade GS-12 to grade GS-15 during the time he was at VA Togus. SLACK then admitted that it took her only "a day or two" to determine whether a journalistic colleague was competent or not. DR. FRANCHINI asked SLACK whether she should doubt or at least question whether someone who had: operated with him; been aware of his obvious competence, given him very positive reviews and fitness reports; recruited him to assist him at surgery-preferring him to medical doctors in complex ankle cases and had participated in reviews resulting in approval of his various raises in grade levels could credibly make such an accusation. DR. FRANCHINI

advised defendant SLACK that the only cases reviewed concerning DR. FRANCHINI's patient care and treatment before he resigned from VA Togus which rose to the level of being submitted to DR. FRANCHINI for response had been addressed and rebutted and found to have been properly handled by a panel of independent physicians in 2010. These cases were never again raised by VA Togus.

55. Defendant SLACK responded by shrugging her shoulders and sheepishly looking away from DR. FRANCHINI.

56. DR. FRANCHINI also advised defendant SLACK that if her proposed story were correct, and that he was as bad as she (incorrectly) claimed, then he would have been negligently harming approximately 50% of the patients whom he treated. Defendant SLACK agreed. DR. FRANCHINI pointed out that this meant there would be thousands of patients who ought to have been harmed by him at VA Togus, the other hospitals where he practiced in Maine, greater New England and elsewhere over his career. DR, FRANCHINI advised defendant SLACK that he never had a claim, much less a finding, of malpractice in his entire surgical career. He again asked defendant SLACK how such a proposed story could be believed; asking defendant SLACK, where the other thousands of claimants?

57. Defendant SLACK responded by shrugging her shoulders and sheepishly looking away from DR. FRANCHINI.

58. DR. FRANCHINI told defendant SLACK that physician's bogus "review" had only been undertaken *after* DR. FRANCHINI had been

vindicated by the review of a panel of independent doctors and DR. FRANCHINI had resigned from VA Togus at a time when no investigations were pending against him; and after certain VA Togus personnel realized they were themselves vulnerable for wasting time investigating DR. FRACHINI. Defendant SLACK was also told by DR. FRANCHINI that after he was vindicated by the independent panel of doctors that certain personnel at VA Togus sent out letters *inviting* former patients to make claims against the VA based on treatment given by DR. FRANCHINI; followed by in-person pleading by certain VA personnel encouraging the former patients to make claims, at a time when the said certain personnel were aware that the statute of limitations on any such claims would have expired *years* before. After providing defendant SLACK with the foregoing information DR. FRANCHINI asked SLACK whether she did not see that the entire story was bogus and upon further investigation could be verified as such.

59. Defendant SLACK responded by shrugging her shoulders and sheepishly looking away from DR. FRANCHINI.

60. DR. FRANCHINI also provided defendant SLACK with the names of four other surgeons who had personally observed him over the years who could offer firsthand information about DR. FRANCHINI's day to day surgical practice based on their personal observations. Defendant SLACK contacted none of them.

15

61. DR. FRANCHINI thus presented defendant SLACK, and/or vicariously/directly her employer GANNETT COMPANY with the aforesaid information and other information demonstrating, *inter alia*, that the proposed story was a product of fabrication, invention, unverified assertions, so inherently improbable that only a reckless person would put them into circulation and despite obvious reasons to doubt the veracity of the informant(s) upon whom the article was based as well as the accuracy of reports of that person(s); thus constituting actual malice.

<u>COUNT 4</u>

<u>AGAINST INVESTORS'S BUSINESS DAILY</u>
<u>FOR LIBEL AND/OR DEFAMATION</u>

62. Plaintiff DR. FRANCHINI repeats and realleges each and every allegation contained in Paragraphs 3-61 above, inclusive, with the full force and effect as if set forth fully herein.

63. On or about December 22, 2017, Defendants Investor's Daily and/or Pipes caused to be published a certain article entitled "VA Negligence is Killing Veterans."

64. The said article was false and libelous and/or defamatory in the following respects: The article stated that Franchini "botched 88 procedures," including two specifically highlighted – a severed tendon and a failed fusion which led to an amputation. The article stated that Franchini was "allowed" to resign and

16

return to private practice, thereby implying that some manner of formal investigation or knowledge of substandard/negligent care existed with VA Togus at the time of Franchini's departure.

65. The said article's offensive content expressly and implicitly misstated the content of the VA Togus reportage upon which it was purportedly predicated.

66. The said article's offensive content was neither truthful nor otherwise privileged.

67. The libelous/defamatory content described above damaged Franchini's reputation in a manner which would adversely affect his fitness for the proper conduct of his profession (podiatry) and, accordingly, constitutes "special harm" under applicable law.

## COUNT 5

### AGAINST GANNETT COMPANY AND DONOVAN SLACK FOR FRAUDULENT OR NEGLIGENT MISREPRESENTATION

68. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 3-67 above inclusive, with the full force and effect as if set forth fully therein.

69. During the course of the investigation by GANNETT COMPANY/SLACK and/or preparation for the article discussed above in Count 3, GANNETT COMPANY/SLACK requested that DR. FRANCHINI meet with SLACK for an interview. The meeting and interview occurred at the Intercontinental Hotel in New York, New York.

70. DR. FRANCHINI agreed to the interview subject to the condition, *inter alia*, that GANNETT COMPANY/SLACK not identify the location of his then-current employment.

70. GANNETT COMPANY/SLACK represented and committed to DR. FRANCHINI in advance of the interview that the location of his then-current employment would not be identified in the resulting article.

71. Same was re-confirmed during the interview itself when DR. FRANCHINI became alarmed that SLACK had in her possession, during the interview, a copy of his Massachusetts licensure application, a document which he believed to be confidential and privileged, and with respect to which SLACK refused to disclose how she obtained same.

72. DR. FRANCHINI relied upon the foregoing representation and commitment in agreeing to the interview and in continuing with the interview once it had commenced and he became aware of SLACK's possession of his Massachusetts licensure application.


73. At the time of the aforesaid representation/commitment, GANNETT COMPANY/SLACK knew that the said representation/commitment was false and that the purpose of the said representation/commitment was to fraudulently and wrongfully induce DR. FRANCHINI's detrimental reliance upon same, in order to obtain the desired interview.

74. Alternatively, GANNETT COMPANY/SLACK knew or should have known in the existence of due care that the said representation/commitment was false.

75. The said representation/commitment was false. In the subject article, GANNETT COMPANY/SLACK did identify the location of Franchini's then-current employment.

76. By virtue of aforesaid fraudulent or negligent misrepresentation by GANNETT COMPANY/SLACK DR. FRANCHINI has been damaged.

77. GANNETT COMPANY/SLACK has acted with malice towards Franchini or, alternatively, the actions of GANNETT COMPANY/SLACK have been of such an egregious and outrageous character and nature that malice can be inferred therefrom or malice is implied therein.

<u>COUNT 6</u>

<u>AGAINST ALL DEFENDANTS</u>
<u>FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>

78. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 3-77 above, inclusive, with the full force and effect as if set forth fully herein.

79. By virtue of the foregoing, Defendants have breached their duty to Franchini to exercise due care respecting and to fully investigate and to publish accurate facts regarding him and to no libel and/or defame him.

19

80. Defendants' breaches of their duty of due care to DR. FRANCHIN, as well as their failure(s) to fully investigate and to publish accurate facts regarding him and to not libel and/or defame him were by its nature certain or substantially certain to cause severe emotional distress to DR. FRANCHINI.

81. By virtue of the said conduct, DR. FRANCHINI has suffered severe emotional distress.

82. The said emotional distress was so severe that no reasonable individual could be expected to endure it.

83. By virtue of the foregoing infliction of emotional distress, DR. FRANCHINI has been damaged.

WHEREFORE, by reason of the foregoing, Plaintiff THOMAS C. FRANCHINI, D.P.M.  prays for judgment on the Complaint and against Defendants, and each of them, for his reasonable compensatory damages, and presumed and punitive damages and for his reasonable attorney's fees and costs, and for such other and further relief as to the Court may appear just and proper.

PLAINTIFF DEMANDS A JURY TRIAL.


DATED:  NEW YORK, NEW YORK          BELAIR & EVANS LLP
        December 19, 2019

                                By: Raymond W. Belair
                                    Raymond W. Belair
                                    90 Broad Street
                                    New York, New York 10004
                                    Tel. 212-344-3900
                                    Fax. 212-514-6661
                                    RBelair@belairevans.com

20

*Jens-Peter W. Bergen*
**JENS-PETER W. BERGEN**
**79 Portland Road**
**Kennebunk, ME 04043**
**Tel. (207) 985-6789**
**Fax: (207) 985-6163**
JWBERGEN@mainelawyer.net


**Attorneys for**
**Plaintiff Thomas C. Franchini, D.P.M.**




<u>**CERTIFICATE OF SERVICE**</u>

**I hereby certify that on this date I caused the attached document to be filed with the Clerk of the Court's CM/ECF system, which will effect electronic service upon all registered counsel of record.**

**DATED: December 19, 2019**


*Jens-Peter W. Bergen*
**JENS-PETER W. BERGEN**
**79 Portland Road**
**Kennebunk, ME 04043**
**Tel. (207) 985-6789**
**Fax: (207) 985-6163**
JWBERGEN@mainelawyer.net


**Attorney for**
**Plaintiff Thomas C. Franchini, D.P.M.**