## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| THOMAS FRANCHINI, | ) |
|         Plaintiff, | ) ) ) |
| v. | ) Docket no. 1:18-cv-00015-GZS ) |
| BANGOR PUBLISHING CO. INC. et al., | ) ) ) |
|         Defendants. | ) ) |

### ORDER ON MOTION TO STRIKE SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE TO DISMISS SECOND AMENDED COMPLAINT

Before the Court is a Motion to Strike Second Amended Complaint or in the Alternative to Dismiss Second Amended Complaint filed by Bangor Publishing, Inc. and Meg Haskell (together, "Bangor Defendants"); MTM Acquisition, Inc. and Edward Murphy (together, "MTM Defendants"); Gannett Company, Inc. and Donovan Slack (together, "Gannett Defendants"); and Investor's Business Daily, Inc. ("IBD"), all the defendants in this action (collectively, "Defendants") (ECF No. 95). For the reasons explained herein, the Court GRANTS the Motion as to the Bangor Defendants, the MTM Defendants, and the Gannett Defendants.[1]

### I. BACKGROUND & PROCEDURAL HISTORY

In early 2018, Thomas Franchini initiated this civil action, alleging, *inter alia*, that journalists and newspaper publishers, Defendants in this action, had published defamatory statements about his work as a surgeon with the U.S. Department of Veterans' Affairs ("VA")

---

[1] As to IBD, the Court has granted its separately filed Motion to Strike Plaintiff's Second Amended Complaint (ECF No. 96) via another Order (ECF No. 112). As explained in that ruling, a previously ordered stay of proceedings leaves this Court presently without jurisdiction to consider the substantive or procedural merits of Plaintiff's request to file a second amended complaint as to IBD. Therefore, to the extent that IBD also joined the pending Motion (ECF No. 95), the relief sought by IBD is MOOT. In the discussion that follows all references to "Defendants" exclude IBD.

(ECF No. 1). Defendants filed various motions seeking dismissal and judgment on the pleadings (ECF Nos. 17, 18, 24 & 26) with respect to Franchini's First Amended Complaint (ECF No. 6). The Court granted in part and denied in part these Motions on March 29, 2019 (ECF No. 55). In so ruling, the Court denied IBD's request to dismiss Franchini's action against it pursuant to California or Maine Anti-SLAPP statutes. IBD timely appealed that decision (ECF No. 58). Shortly thereafter, the Court ordered a stay of proceedings as to IBD, pending resolution of the appeal (ECF No. 66).

In September 2019, the Court issued a scheduling order (ECF No. 85), to which the parties objected (ECF Nos. 88 & 89). At a hearing on these objections (ECF No. 93), Defendants proposed that discovery proceed in two stages. They suggested that the first stage be limited to the issue of Franchini's status as a public official or limited purpose public figure, and that the Court thereafter allow the filing of summary judgment motions on that issue. In arguing for discovery to proceed in this fashion, Defendants pointed out that the Court's March 2019 Order had ruled Franchini had not pled actual malice as a matter of law. As a result, if a more developed record supported a finding that Franchini was a public official or limited purpose public figure, he would be barred from recovery on his defamation claims. See New York Times Co. v. Sullivan, 376 U.S. 254, 283 (1964) (holding that, absent actual malice, the Constitution bars recovery for libel against public officials in their official capacity). Bifurcating discovery to first address the public figure question could thus save the parties extensive discovery related to issues that would be irrelevant if Franchini proved to be a public official or limited purpose public figure.[2]

---

[2] Although the proceedings are stayed between Plaintiff and IBD pending resolution of IBD's interlocutory appeal, IBD joined in Defendants' objection to the scheduling order, and IBD's counsel appeared at the hearing. It apparently did so because the public figure issue is separate from the Anti-SLAPP argument forming the basis of IBD's appeal. See 10/3/19 Tr. (ECF No. 93), PageID # 568.

At the hearing, Franchini's counsel ultimately agreed that a summary judgment ruling finding Franchini a public official or limited public figure would be dispositive as to the defamation claims. (10/3/19 Tr. (ECF No. 93), PageID # 577.) He told the Court he didn't believe any amendment to the complaint would directly impact the public official/limited public figure issue. (Id. at PageID # 584.) The Court agreed with Defendants and issued a bifurcated discovery schedule with a first stage limited to the issue of Franchini's status as a public official or limited purpose public figure (ECF No. 92). The Court also extended the deadline for amendment of the pleadings to December 20, 2019. In accordance with this extended deadline, Franchini filed a Second Amended Complaint (ECF No. 94). This amended pleading contained new allegations related to the issue of actual malice.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 15 governs amendment of pleadings. It permits parties to amend once as of right and requires them to obtain written consent of the opposing party or leave of the court for all other amendments. FED. R. CIV. P. 15(a). Although leave is to be freely given, "a district court may deny leave to amend when the request is characterized by 'undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part.'" Nikitine v. Wilmington Tr. Co., 715 F.3d 388, 390 (1st Cir. 2013) (alteration in original) (quoting Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006)). A proposed amendment may be denied as futile if it fails to state a claim upon which relief could be granted. Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009). That is, it may be denied if, even with the amendment, the complaint would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In making this determination, the Court must accept as true all well pleaded factual allegations in the complaint and draw all reasonable inferences in the nonmovant's favor. Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir 2009). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (internal quotation marks omitted) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)); see also Iqbal, 556 U.S. at 678 (stating that courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

### III.  DISCUSSION

Invoking Rules 12 and 15 as well as this Court's March 29, 2019 Order, Defendants now ask that Plaintiff's Second Amended Complaint be stricken or dismissed. They offer a substantive argument—that the new allegations are insufficient to meet the pleading standard for actual malice—as well as a procedural one—that Plaintiff's amendment ought to be rejected as unduly delayed and prejudicial. The Court turns first to Defendants' substantive argument.

The Court's March 2019 Order anticipated the issues at hand. That Order noted Plaintiff's request for leave to amend included within Plaintiff's opposition to Defendants' Motions. The Court observed that Plaintiff had not attached any amended pleading or otherwise disclosed any additional facts to be pled. The Court then stated:

> To the extent this Order dismisses Plaintiff's claims for presumed damages under Counts I-IV, his claims for punitive damages against the Gannett Defendants, and Count VI, the Court concludes any amendment would be futile. To the extent Plaintiff's request to amend pertains to other aspects of the remaining counts the request to

4

> amend is denied without prejudice to Plaintiff renewing his request with an attached proposed amended complaint for the Court's review.

(ECF No. 55, PageID # 366, n.12.)  The Court's dismissal of claims for presumed damages under Counts I-IV and for punitive damages against the Gannett Defendants was premised on its conclusion that Plaintiff had not presented facts sufficient to raise a plausible allegation of actual malice.  Thus, the Court's statement here indicated its view that any amendments attempting to plead actual malice would be futile.

Review of Plaintiff's Second Amended Complaint confirms the Court's March 2019 assessment:  Plaintiff's attempt to plead actual malice is futile.  As explained in the March 2019 Order, to plead actual malice, a plaintiff must present facts sufficient to allow, at the very least, a plausible inference that the speaker "entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731 (1968).  The new paragraphs in Plaintiff's Second Amended Complaint simply do not do so.  Four of those paragraphs[3] merely recite "actual-malice buzzwords," presenting legal conclusions that must be supported by well-pled facts to survive a motion to dismiss.  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 56 (1st Cir. 2012). The remaining paragraphs do plead certain facts—Plaintiff alleges that when Defendant Slack approached him regarding the article she eventually published with USA TODAY, Plaintiff presented her with information that, he alleges, cast such doubt on the truth of her story that it could only have been published with reckless disregard as to its veracity.  But, drawing every plausible inference in favor of Plaintiff from these facts, the Court cannot conclude that Slack and USA TODAY (the name under which Gannett Company does business) published the story with

---

[3] See Second Amended Compl. (ECF No. 94), PageID # 602, ¶¶ 30-32, 34.

reckless disregard as to its truth or falsity. See St. Amant, 390 U.S. at 730-32 (discussing the "reckless disregard" standard for actual malice).

As Defendants point out, because of the First Amendment interests implicated by a claim of defamation by a public figure, the standard for pleading actual malice "is a daunting one." Howard v. Antilla, 294 F.3d 244, 252 (1st Cir. 2002). Even where a plaintiff establishes an extreme departure from professional norms, the standard for actual malice is not met unless the plaintiff can establish that the defendant actually entertained serious doubts about the truth of the publication at issue. Id. In assessing whether a defendant held such a subjective belief, courts often must rely on inferences of malice drawn from objective facts. See Lemelson v. Bloomberg L.P., 903 F.3d 19, 24 (1st Cir. 2018). The First Circuit has looked to other courts of appeals for guidance in this analysis. See Howard, 294 F.3d at 253. Using such guidance when assessing the objective facts here, the Court cannot draw any plausible inferences of actual malice from the allegations contained in the Second Amended Complaint.

First, Slack's article on its face evinces a level of due diligence in reporting that belies Plaintiff's allegations of actual malice. The fact that Slack sought Plaintiff's comment, which was included in the article, and presented his version of events alongside that of the VA undermines any inference of actual malice.[4] See Lemelson, 903 F.3d at 24 (stating that a reporter's repeated attempts to solicit comment from the plaintiff and inclusion of the plaintiff's statement in the contested article undermined an inference of actual malice); Howard, 294 F.3d at 253-54 (stating

---

[4] Plaintiff alleges he told Slack (1) he had not harmed 88 of his patients at VA Togus, (2) a 2010 review of complaints against him by an independent physician panel had revealed no deficiencies in his practice, (3) an investigation by the VA after his resignation was spurious, and (4) inconsistency between his alleged error rate at the VA and absence of complaints regarding his practice elsewhere cast doubt on the credibility of the VA's findings. Here, as in its March 2019 Order, the Court considers the relevant articles, attached to the Defendants' first set of Motions to Dismiss, merged with the pleadings. See Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988). The USA TODAY article (ECF No. 24-1) contains four paragraphs that recount the statements Plaintiff alleges he made to Slack. The USA TODAY article also provides a sidebar timelining the VA's investigation into Plaintiff.

that where defamation claims arise from the implications of statements in an article, the inclusion of both sides of the relevant issue indicates lack of actual malice). Moreover, the article's implication that Plaintiff provided substandard care and left the VA under investigation derives from its presentation of information the veracity of which is undisputed—that the VA investigated Plaintiff's surgical performance, reaching certain conclusions, and its chief of surgery testified under oath about these conclusions. Such conclusions, including that Plaintiff made mistakes harmful to veterans in 88 cases, were so contrary to the VA's interest, it would be implausible for Slack and USA TODAY to doubt their veracity, even in the face of Plaintiff's assertions that they were false. See Lemelson, 903 F.3d at 24.

Second, Plaintiff has not pled facts sufficient to establish actual malice via failure to investigate. Plaintiff alleges he cast doubt on the credibility of the source Slack cited in support of the claims that Plaintiff had harmed 88 VA patients and was "the worst doctor in the history of the VA." He also alleges that he referred Slack to four surgeons who had worked with him, but she contacted none of them. Through these allegations, Plaintiff seems to suggest that Slack's decision not to further investigate is evidence of actual malice. Unless there is evidence that a defendant purposefully avoided investigation to prevent discovery of the truth, however, failure to investigate does not by itself indicate actual malice. Michel v. NYP Holdings, Inc., 816 F.3d 686, 703 (11th Cir. 2016) (citing Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 692 (1989)). Nothing in Plaintiff's allegations indicates that Slack had reason to believe contacting the additional surgeons or further investigating her source's credibility would reveal falsehoods in her reporting such that her decision not to conduct such investigations constitutes reckless disregard for the truth.

Finally, Plaintiff's allegations that Slack was biased against him and that the inconsistency between his alleged error rate at the VA and elsewhere calls the VA's figures into question do not support his claim of actual malice.  Facts regarding motive may speak to the question of actual malice.  See Lemelson, 903 F.3d at 24.  But a bare assertion of bias, without further facts demonstrating that the alleged bias was accompanied by knowledge of or reckless disregard for falsehood, has little purchase in the actual malice assessment for this case.  And Plaintiff's critique of the VA's numbers is not supported by the record:  According to Plaintiff, he performed approximately 580 surgeries at VA Togus.  The USA TODAY article reports the VA's conclusion that 88 of them were harmful.  This results in an approximately 15% error rate—not the 50% Plaintiff alleges and claims tests credulity.  Even if the article's inclusion of Plaintiff's comment, "If I was so bad, I would be bad all the time," didn't already rebut any suggestion of actual malice, an error rate of 15% cannot raise questions as to the veracity of the VA's figures such that an inference of actual malice can be drawn from Slack's reporting.  (ECF 24-1, PageID # 178.)

Plaintiff alleges that the remaining Defendants "relied upon previous publications of the article by GANNETT COMPANY and SLACK on DR. FRANCHINI," apparently suggesting this as a basis for actual malice with respect to them.  (ECF No. 94, PageID # 602.)  But since actual malice requires a showing that defendants knew of or acted with reckless disregard as to falsity, simple allegations of reliance on another's article, particularly one that, on its face, demonstrates due diligence in reporting, are insufficient to establish actual malice.  In short, Plaintiff's new allegations do not support a claim of actual malice against either the Gannett Defendants or any of the remaining Defendants.

Having decided for Defendants based on their substantive argument and determined that Plaintiff's proposed amendment is futile, the Court need not reach their procedural argument.

However, the Court will address one other procedural irregularity: Plaintiff's failure to seek leave to file this Second Amended Complaint in conjunction with filing it on the docket. Although it is contrary to the Rules of Civil Procedure to file an amended complaint without first seeking leave to amend, Plaintiff belatedly sought to correct this error by including a *nunc pro tunc* request in his Response. (ECF No. 99, PageID # 645.) Because this request cannot cure the fundamental futility of Plaintiff's proposed amendment, it is properly DENIED. The Court notes that, in addition to its insufficient attempt to plead actual malice, the Second Amended Complaint also repeats claims that were dismissed as insufficient as a matter of law in the March 2019 ruling. Those claims remain dismissed per the Court's earlier Order.

### IV.   CONCLUSION

Based on the foregoing, the Court GRANTS Defendants' Motion to Strike or in the Alternative to Dismiss Second Amended Complaint (ECF No. 95) to the extent that Motion sought to prevent Plaintiff's proffered amendment of his complaint. This case shall proceed on the First Amended Complaint as to only those claims that were not dismissed pursuant to the Court's March 2019 Order.

SO ORDERED.

 /s/ George Z. Singal
 United States District Judge

Dated this 15th day of April, 2020.