```
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
```

-------------------------------------------X

                                                                  Civil Action No:

                                                                  1:18-CV-00015-GZS

THOMAS FRANCHINI,

                    Plaintiff,

              v.

BANGOR PUBLISHING COMPANY, INC. et al.,

                    Defendants.

------------------------------------------ X

**PLAINTIFF'S OPPOSING STATEMENT OF MATERIAL FACTS**

Plaintiff Thomas C. Franchini, D.P.M. (Dr. Franchini), solely for the purposes of the instant summary judgment motion, submits the following Opposing Statement of Material Facts in opposition to defendants Donovan Slack and Gannet Company, Inc. dated December 15, 2022.

1. In August 2017, Donovan Slack interviewed Thomas Franchini in connection with an article she was preparing for the USA TODAY newspaper. (Plaintiff's First Amended Complaint, ECF No. 6 ("FAC") at ¶ 56; Declaration of Donovan Slack ("Slack Decl.") at ¶ 15).1).

**Qualified**: Ms. Slack personally interviewed Dr. Franchini on August 22, 2017. (Dr. Franchini Decl. 4, 7)

2. Plaintiff alleges Ms. Slack told him she would not publish the location of his employment as a podiatrist with a Dr. Joseph S. Fox in Manhattan; that she did publish that location; and that Dr. Fox fired him because the location was published. (Deposition of Thomas Franchini ("Franchini Dep.") at 96:15-21; 104:23-105:2).2

**Qualified**: Dr. Franchini told Ms. Slaok both before the in-person interview and at the beginning of the in-person interview that he was negotiating to purchase the practice of Dr. Fox and that if she published the location of the practice it would be the end of Dr. Franchini employment and his ability to purchase the practice of Dr. Fox; that Ms. Slack told him both before the in-person interview and at the beginning of the in-person interview that she would not publish the name or address of Dr. Fox's practice; that she did publish the address of the practice and Dr. Fox did fire him.  (Dr. Franchini Dep. 96:15-21; 104:23-105:2).2; Dr. Franchini Decl. 4- 7).

3. Ms. Slack conducted an on-the-record, in-person interview of Plaintiff on August 22, 2017 in New York City. (Slack Decl. at ¶ 15).

**Qualified**: During the so-called "on the record" in-person interview of Dr. Franchini by Ms. Slack on August 22, 2017, Ms. Slack did not record the entirety of what Dr. Franchini said and what Ms. Slack said because Ms. Slack would turn the recorder on and off at various stages of the interview.( Dr. Franchini Decl. 7-8).

[Footnote:1 A true copy of the Slack Declaration with its exhibits is attached hereto as Attachment 1. Exhibit B to the Slack Declaration is a flash drive containing audio files; the flash drive is on file with the Clerk of the Court and a copy has been provided to Plaintiff's counsel with this filing.

2 A true copy of the portions of the Franchini Deposition cited in this Statement of Material Facts is attached hereto as Attachment 2.

Case 1:18-cv-00015-GZS Document 205 Filed 12/15/22 Page 1 of 3 PageID #: 3579}]

4. Prior to that interview, Ms. Slack and Plaintiff spoke twice by telephone. (Franchini Dep. 107:6-10; 109:8-10; Slack Decl. at ¶¶ 8-9).

**Qualified**: Dr. Franchini and Ms. Slack spoke twice by telephone on August 14, 2017. Additionally Dr. Franchini spoke to Ms.

Slack on August 17, 2017 and August 21, 20 and also at least one more time by phone on August 21, 2017 (Dr. Franchini Decl. 3-6).

5. Those two telephone calls occurred on August 14, 2022. (Id.).

**Qualified**: Two telephone calls occurred on August 14, 2017. (Dr. Franchini Decl. 3 ).

6. Both phone calls were recorded in their entirety. (Id. at ¶¶ 10-12 & Exhs. B, C & D).

**Qualified**: The two telephone calls of August 14, 2017 were recorded, at least in part (*Id.*).

7. Plaintiff alleges Ms. Slack told him that the then-location of his employment with Dr. Fox would not be disclosed in the article she was preparing. (Franchini Dep. 111:2-9).

**Admitted**.

8. Plaintiff alleges Ms. Slack made that statement to him twice, once at the in-person meeting, and once in their phone conversations. (Franchini Dep. 110:25 – 111:9).

**Qualified**: Ms. Slack told Dr. Franchini at least twice that she would not reveal the location of Dr. Franchini's employment with Dr. Fox; at least once in a telephone conversation after the two telephone conversations of August 14, 2017. To wit, on August

17, 2017 and again during the in-person interview of August 22, 2017. (Dr. Franchini Decl. 3-7).

9. Ms. Slack made no such statement in the phone conversations. (Slack Decl. ¶¶ 17-18 &Exhs. B, C & D).

<u>Qualified</u>: Ms. Slack made no such statement during the two telephone conversations of August 14, 2017. She did make that statement during the phone call of August 17, 2017.

10. At the in-person meeting, Plaintiff became "alarmed" because he believed Ms. Slack had a copy of his Massachusetts licensing materials, which he believed to be confidential and privileged. (FAC ¶ 59; Franchini Dep. at 119:21-22).

<u>Qualified</u>: Dr. Franchini became concerned and alarmed when, late in the in-person interview of August 22, 2017, he saw Ms. Slack produce copies of his Massachusetts podiatry license application and copies of his patients' charts. (Dr. Franchini Dep. 115:22-116: 8,  119:20-120:8, Dr. Franchini Decl.7-9).

11. Plaintiff claims Ms. Slack said "I have my ways" of getting such material. (Dr. Franchini Dep.at 120:3-5).

<u>Qualified</u>: Ms. Slack said "I have my ways," as respects how she obtained Dr. Franchini's Massachusetts podiatry license application and the patients' charts. (Dr. Franchini Dep.at 120:3-5; Dr. Franchini Decl. 7-9).

12. Plaintiff "had no faith in her [Ms. Slack]." (Franchini Dep. at 119:22-23).

**Qualified**: Dr. Franchini was concerned and alarmed, at the point when the interview was almost over, about how reliable Ms. Slack was after she produced Dr. Franchini's Massachusetts podiatry license application. (Dr. Franchini Dep. 119:22-23; Dr. Franchini Decl. 7-9).

13. Plaintiff believed he could not trust Ms. Slack (Franchini Dep. at 120:3-5 ("she's already not to be trusted by having that document and her saying 'I have my ways.'").

**Qualified**: Dr. Franchini was concerned about Ms. Slack's promises after she said, when the interview was almost over, she "had she had her ways," as respects her acquisition of Dr. Franchini's Massachusetts podiatry license application (Dr. Franchini Dep. 120:3-5; Franchini Decl. 7-9).

14. At the in-person meeting, Plaintiff had "concern at that point that . . . anything she [Slack] promises would be false." (Franchini Dep. 120:6-8).

**Qualified**: Late in the interview Dr. Franchini first had concerns and alarm about Ms. Slack's truthfulness and honesty; and at that point feared that her promises were false. However,

by that point it was too late. (Dr. Franchini Dep. at 120:3-5; Dr. Franchini Decl. 7-9).

15. When Ms. Slack allegedly said at the in-person meeting she would not disclose the location of his work, Plaintiff did not believe her. (Franchini Dep. 119-22-120:2 ("I was also concerned that she was promising, but I had no faith in her that she was going to put the – she had my Massachusetts license. How could I trust the fact that she's not going to reveal my location of work?"); 120:15-18 ("Q: . . . So you didn't believe her when she said she wasn't going to disclose it? A: No, of course not. And she did. She disclosed it.").

<u>Qualified</u>: Dr. Franchini had believed and relied on Ms. Slack's repeated promises not to publish his place of employment and to let him review her draft story before publication. After, late in the interview, Ms. Slack produced copies of his Massachusetts Massachusetts podiatry license application and copies of his patient's charts. Dr. Franchini first had concerns and alarm about Ms. Slack's truthfulness and honesty; and at that point feared that her promises were false. However, by that point it was too late. (Dr. Franchini Dep. at 120:3-5; Dr. Franchini Decl. 7-9).

16. Plaintiff's claimed reliance is his meeting with Ms. Slack in New York. (FAC ¶ 60).

**Qualified**: Dr. Franchini relied on the promises made by Ms. Slack in their telephone call of August 17, 2017 and again at the beginning of the in-person interview until, late in the interview, Dr. Franchini's Massachusetts podiatry license application was produced by Ms. Slack. (FAC ¶ 60; Decl.7-9).

17. Plaintiff claims he lost employment and business opportunity in New York with Dr. Fox due to the publication of the location of his employment with Dr. Fox. (Franchini Dep. at 96:15-21).

**Admitted**.

18. At all relevant times, Ms. Slack has been domiciled in and worked from the District of Columbia. (Slack Decl. ¶ 2).

**Admitted.**

## PLAINTIFF'S STATEMENT ADDITIONAL MATERIAL FACTS

1. At all relevant times Dr. Franchini was a citizen and resident of the State of Rhode Island. (DR. Franchini Decl. 2)

2. After the two phone calls with Ms. Slack on August 14, 2014 there two more phone calls with Ms. Slack before August 22, 2017, (Dr. Franchini Decl. 2-5).

3. There was an exchange of text messages between Ms. Slack and Dr. Franchini in which Ms. Slack referenced and confirmed the contents of a telephone call with Dr. Franchini after August 14, 2017 (Dr. Franchini Decl. 6); Exhibit "1" to this Statement)).

4. The recordings of the two August 14, 2017 telephone calls between Dr. Franchini and Ms. Slack contain no statement by Dr. Franchini that anything would be the end of him. (Exhibits B, C and D to Slack Declaration.

5. During the in-person interview of Dr. Franchini by Ms. Slack, Ms. Slack turned her tape recorder on and off an various times.. Franchini Decl. 10).

Dated: January 23, 2023

                                    BELAIR & ASSOCIATES, P.C.

                                    By *Raymond W. Belair*

                                    Raymond W. Belair
                                    55 Pondfield Road
                                    Bronxville, NY 10708
                                    Tel (212) 344-3900

                                    JENS-PETER W. BERGEN
                                    By *Jens-Peter W. Bergen*
                                    79 Portland Road
                                    Kennebunk, ME 04043
                                    Tel (207)985-6789

           ATTORNEYS FOR PLAINTIFF THOMAS C. FRANCHINI, D.P.M

TO:
Roach Ruprecht Sanchez & Bischoff, P.C
Counsel for Defendants Donovan Slack and Gannett Co., Inc

By electronic means