```
UNITED STATES DISTRICT COURT
DISTRICT OF MAINE
-------------------------------------X

THOMAS C. FRANCHINI, D.P.M.,              Civil Action No:

                                          1:18-CV-00015-GZS

              Plaintiff,

         -against-

BANGOR PUBLISHING CO., INC. et al.,

              Defendants.
-------------------------------------X
```

DECLARATION OF PLAINTIFF THOMAS C. FRANCHINI, D.P.M.

Plaintiff Thomas C. Franchini, D.P.M. hereby affirms the truthfulness of the following declaration.

1. I am the plaintiff in this action and a podiatrist licensed to practice podiatry in the State of New York and in other jurisdictions. The statements made herein by me are based on my personal knowledge.

2. On August 14, 2017 I received the first of two telephone calls from defendant Donovan Slack on my cell phone. I was at that time a citizen and resident of the State of Rhode Island where I received the calls, practicing podiatry in New York and Massachusetts. Ms. Slack told me that she was a USAToday reporter who focused on the Veterans Administration and that she

was writing a story about the Federal Tort Claims Act suits pending before Judge Levy in the District of Maine.

3. There was a second two phone call from Ms. Slack on August 14, 2017. The first was brief and the second lasted over an hour. I have listened to the two recorded conversations which have been submitted to the Court.

4. There were two more phone calls with Ms. Slack after the two calls which took place on August 14, 2017 and before August 22, 2017, on which date I met in-person with Ms. Slack at the Intercontinental Hotel in New York City.

5. During one of the two phone calls <u>after</u> August 14, 2017, specifically on August 17, 2017, and before I agreed to an in-person meeting with Ms. Slack, she asked if she could bring a photographer to the proposed meeting. I replied in the negative, stating that I was not in a "popularity contest." I told her I was hesitant to meet with her.  Ms. Slack then replied that if I did not meet with her that her story would be much more damning than if I did meet with her. I asked Ms. Slack not to publish the name or address of my place of employment in New York City, which was the office of Joseph Fox, D.P.M. I told her that if she did so that I would be ruined and would lose my job. Ms. Slack assured me that she would not publish the name or address of my New York employer. Based on the commitment by Ms. Slack,

on which I relied, I agreed to the in-person interview. She also reassured me by stating that she would let me read the final draft of her story before it was submitted for publication.

6. On August 21, 2017 I also exchanged text messages with Ms. Slack. A copy of that exchange is attached as "Exhibit 1." I respectfully call to the Court's attention to Ms. Slack's statement in that text exchange:

> Perfect.
> Some of what you said the other day is haunting me – you worried that the story would be the end of you. You have a wife and family and life far beyond va [Veterans Administration] so nothing is the end of you. (Exhibit 1, attached hereto).

Ms. Slack's reference to "what [I} said the other day" was not a reference to either of the two phone calls of August 14, 2017, since the recordings of those two phone calls do not contain any such reference. Her reference in the August 21, 2017 text message was clearly to the phone call of August 17, 2017. Ms. Slack's declaration does not state that the calls subsequent to August 14, 2017 were recorded.

7. At the beginning of the in-person meeting of August 22, 2017 Ms. Slack once again assured me that she would not publish the name or address of my employer; and I relied on that assurances in beginning the interview. Ms. Slack also assured me

that I would be able to review her final draft story before it was submitted for publication.

8. Long after the said interview began, Ms. Slack for the first time produced a copy of my application for a Massachusetts podiatric license, together with patients' medical records which, as I understood it, was in violation of HIPAA. It was at that time that I first began to be concerned and alarmed that she would not keep her word.

9. However, by that time the interview was almost over, and it was too late rectify the situation. Prior to Ms. Slack producing the application and the medical records I had trusted her and believed her promises not to publish my place of employment. Had I not believed her, I would not have agreed to the interview.

10. Ms. Slack recorded part, but not all, of our in-person interview; from time to time she turned the recorder on and off.

11. Ms. Slack never sent me a draft or any other version of her story any time before it was published on October 11, 2017.

12. The story as published on October 11, 20177 not only detailed the address of my employment on the front page of USAToday, it also included a map of lower Fifth Avenue in New

York City where my place of employment was shown with a magnifying glass and an arrow pointing to the address.

13. On October 11, 2017, the date of publication, I received a phone call from my employer Dr. Joseph Fox. Dr. Fox stated that the story about me had his "practice's name and address spattered all over this national newspaper," and "not only do they put the name of the practice," but "there is a map, a magnifying glass and an arrow." He said "this is bad." He said that I could not continue as his employee.

14. I was terminated and, of course, my negotiations for the purchase of Dr. Fox's practice were similarly terminated.

15. While my attorney has told me that the motion for summary judgment does not challenge my claim that Ms. Slack's misrepresentations caused me to be damaged, my financial damages alone are approximately $1.8 million dollars.

I declare under penalty of perjury that that this, my declaration, is true and accurate.

Dated: January 23, 2023

/s/ Thomas C. Franchini, D.P.M.

THOMAS C. FRANCHINI, D.P.M.

**EXHIBIT 1 TO DR. FRANCHINI DECLARATION**

> Perfect

> Some of what you said the other day is haunting me – you worried that the story would be the end of you. You have a wife and family and life far beyond va so nothing is the end of you

> Text me when you get into

Only two things on it
I have found several written statements
And quotes
Saying that my approach and skills were spot on
But issue was note taking