UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| THOMAS FRANCHINI, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 1:18-cv-00015-GZS |
| ) | |
| BANGOR PUBLISHING CO., INC., ) | |
| et al., ) | |
| ) | |
| Defendant ) | |

### RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In Count V of Plaintiff's Amended Complaint, the one remaining count in this action, Plaintiff asserts a misrepresentation claim against Defendants Gannett Company, Inc., d/b/a USA Today, and Defendant Slack.[1] Plaintiff alleges that he agreed to interview with Defendant Slack for an article in USA Today based on Defendant Slack's representations that she would not disclose in the article the location of Plaintiff's then employment. Plaintiff alleges that Defendant Slack included the location in the article, which caused him to lose his job.

The matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 204.) Defendants contend the record does not support either a fraudulent or negligent misrepresentation claim. Following a review of the summary judgment record,

---

[1] The Court previously entered summary judgment on Plaintiff's claims against the other defendants. *See* Order on J. Mot. for Summ. J. (ECF No. 164); Order on Pending Mot. (ECF No. 185).

and after consideration of the parties' arguments, I recommend the Court grant Defendants' motion.

## FACTUAL BACKGROUND[2]

Plaintiff is a podiatrist licensed to practice podiatry in New York and other jurisdictions. (Plaintiff's Statement of Additional Material Facts (PSAMF) ¶ 1, ECF No. 212; Plaintiff's Declaration, ECF No. 213). On August 22, 2017, Defendant Slack interviewed Plaintiff in person for an article she was preparing for the USA Today newspaper regarding the care Plaintiff provided while employed by the Department of Veterans Affairs, VA Maine Healthcare System, in Augusta, Maine. (Defendant's Statement of Material Facts (DSMF) ¶ 1, ECF No. 205; Amended Complaint, ECF No. 6.)

Plaintiff alleges that Defendant Slack told him that she would not publish the location of his employment as a podiatrist with Dr. Joseph S. Fox in Manhattan, that she published the location in the article, and that Dr. Fox terminated his employment as a result. (DSMF ¶ 2.) According to Plaintiff, he told Defendant Slack, during a telephone conversation before the in-person interview and at the in-person interview, that if Defendant Slack published the location of the practice, it would be the end of Plaintiff's employment. (DSMF ¶¶ 2, 7-8, 17; Pl.'s Resp. to DSMF ¶ 2, ECF No. 212.)

---

[2] The facts are derived from the parties' Local Rule 56 statements of material facts, and the Court presents the facts in the light most favorable to Plaintiff as the non-moving party. *See EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 57 (1st Cir. 2021). Unless otherwise noted, citations to a party's statement of material facts incorporate the opposing party's admission or properly supported qualification. Defendants asked the Court to strike many of Plaintiff's statements of material fact. (Defs.' Resp. to Pl.'s Statement of Add'l Facts, ECF No. 216). Rather than address the requests individually, the Court has reviewed all the cited material and has disregarded any statement of fact that is not properly supported by admissible evidence in the record. *See* D. Me. Loc. R. 56(f).

Prior to the August 22 in-person interview, Defendant Slack and Plaintiff spoke by telephone multiple times. (DSMF ¶ 4.) They spoke twice by phone on August 14, 2017, and the two calls were recorded. (DSMF ¶¶ 4–6.) The transcripts of the two August 14 telephone conversations do not reflect that Defendant Slack made the alleged representation. (DSMF ¶¶ 7-9.) Plaintiff maintains they spoke on the phone again on August 17, 2017, during which call Defendant Slack said she would not publish the location of Plaintiff's employment. (DSMF ¶¶ 8–9; PSAMF ¶ 2; Pl.'s Resp. to DSMF ¶¶ 8-9.) Defendants contend there were no calls other than the August 14 calls. (Defs.' Resp. to PSAMF ¶ 2, ECF No. 216.)

The August 22 in-person interview was conducted in New York City. Defendant Slack recorded parts of the interview but turned her recorder on and off at various times. (DSMF ¶ 3; PSAMF ¶ 5.) Plaintiff maintains that during the in-person interview, Defendant Slack reiterated her representation that she would not identify his employer. (Pl.'s Resp. to DSMF ¶ 2.)

During his deposition Plaintiff asserts that near the end of the interview, Plaintiff became concerned when Defendant Slack produced copies of Plaintiff's podiatry license application and some of his patients' charts. (DSMF ¶¶ 10, 12–13; Pl.'s Resp. to DSMF ¶¶ 2, 10, 12-13.) Plaintiff states that when he asked Defendant Slack how she obtained the application, Defendant Slack replied, "I have my ways." (Pl. Dep. 106:14–106:23, ECF No. 207; DSMF ¶ 11.) Plaintiff claims that at that point he became concerned about Defendant Slack's honesty and feared that her promises were false. (DSMF ¶¶ 10, 12–14.) Plaintiff "feared that [Defendant Slack's] promises were false" but "by that time the

3

interview was almost over … it was too late to rectify the situation." (DSMF ¶ 15; Pl.'s Resp. to DSMF ¶15; Pl. Decl. ¶¶ 8–9.)

## LEGAL STANDARD

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *United States v. Union Bank For Sav. & Inv. (Jordan)*, 487 F.3d 8, 17 (1st Cir, 2007) (quoting Federal Rule of Civil Procedure 56(c)). "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party . . . .'" *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (quoting *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 7 (1st Cir. 2018)). "[A]nd a fact is 'material' if it 'has the potential of affecting the outcome of the case.'" *Id.* (quoting *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 25 (1st Cir. 2011)).

"After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on

4

one or more of the Plaintiff's claims, a trial-worthy controversy exists, and summary judgment must be denied as to any supported claim. *Id.* at 78 ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## DISCUSSION

**A.   Applicable Law** [3]

"A federal court sitting in diversity, as this Court is in this case, must apply the choice-of-law rules of the state in which it sits." *York Ins. Co. of Maine v. Schultz*, 307 F. Supp. 2d 487 (1941)). "Maine applies the 'most significant contacts and relationship' test to choice-of-law questions for tort claims." *Flaherty v. Allstate Ins. Co.*¸ 2003 ME 72, ¶ 16 (Me. 2003). "The contacts to be considered are as follows: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* (citations omitted).

Here, the facts and circumstances support the application of New York law. The relevant events occurred in New York. Plaintiff claims he lost his job in New York based on an article written following a meeting that occurred in New York. The evidence and

---

[3] At the Local 56(h) Conference, the Court directed Plaintiff to "inform Defendants in writing whether (a) Plaintiff stipulates that New York law governs Plaintiff's misrepresentation claim" by November 18, 2022. (Report of Pre-filing Conference at 2, ECF No. 203.) Plaintiff evidently did not so inform Plaintiff. (Motion for Summary Judgment at 5.) In his response to the motion for summary judgment, Plaintiff "assumes" for the sake of argument but does not "concede" that New York law applies. (Response at 9, ECF No. 211.) I construe Plaintiff's failure to comply with the Court's order as a waiver of his ability to be heard on the choice of law issue.

related witnesses (e.g., Dr. Fox) regarding Plaintiff's loss of employment are most likely in New York. Furthermore, there is no other state with significant contacts or a relationship to the circumstances underlying Plaintiff's claim. New York law, therefore, applies.

**B.    Fraudulent and Negligent Misrepresentation**

Plaintiff claims Defendant Slack's alleged representation that she would not disclose where Plaintiff was working constitutes negligent and fraudulent misrepresentation. Defendants contend Defendant Slack did not make the representation and that Plaintiff cannot establish that he reasonably relied on the alleged representation.

"On a cause of action alleging negligent misrepresentation, the plaintiff is required to demonstrate '(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Ginsburg Dev. Companies, LLC v. Carbone*, 134 A.D.3d 890, 894 (N.Y. App. Div. 2015) (citations omitted).

"Generally, in a claim for fraudulent misrepresentation, a plaintiff must allege 'a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178 (2011).

To support their motion for summary judgment, Defendants rely on Plaintiff's testimony and the substance of two August 2017 telephone conversations between Plaintiff and Defendant Slack. In response to the summary judgment motion, Plaintiff filed an affidavit in which he sought to address Defendants' contentions that Defendant Slack did

6

not make the representation and that Plaintiff cannot establish that he reasonably relied on the representation.

### 1. Telephone Calls

Plaintiff testified at deposition that before he agreed to the interview, he spoke by phone with Defendant Slack on multiple occasions in August 2017. The record includes the audio recordings and transcripts of two telephone calls between Plaintiff and Defendant Slack on August 14, 2017. Defendant Slack's alleged representation is not reflected on the recordings or in the transcripts.

When questioned as to who initiated the recorded calls, Plaintiff testified:

> I know I spoke to her twice on the phone. The first call she initiated. I don't remember if I called her back. I think I did, yeah.

(Pl. Dep. 109: 8 – 10.)

The following colloquy then occurred:

> Q. Dr. Franchini, in that initial conversation with Donovan Slack before you met her at the InterContinental Hotel, you and she spoke about having a meeting in New York, an in-person meeting in New York; right?
>
> A. Right. She wanted to meet with me. She said it would be in my best interest to meet with me, and if I don't meet with her, it would not be as good. It would behoove me to meet with her.
>
> Q. Okay. In that conversation, not the InterContinental Hotel, but those, those phone conversations that you described to me, did Donovan Slack tell you that she would not disclose the location of Dr. – your practice with Dr. Fox in the story that was going to run?
>
> A. Correct, she did. She said it twice.
>
> Q. Okay.
>
> A. She said it on the phone and in person.

7

(Pl. Dep. 110:15 – 111:9.)

In his affidavit, Plaintiff asserts that during a subsequent telephone call on August 17, 2017, Defendant Slack made the representation. Defendants contend the Court should strike or disregard the affidavit because Plaintiff made no mention of another phone conversation during his deposition and raised it in his affidavit only after he learned that the recorded conversations of the August 14 calls did not include the alleged representation.

"Where a party has given 'clear answers to unambiguous questions' in discovery, that party cannot 'create a conflict and resist summary judgment with an affidavit that is clearly contradictory,' unless there is a 'satisfactory explanation of why the testimony has changed.'" *Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49, 54 (1st Cir. 2000) (quoting *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir. 1994)). But "lapse of memory, new sources of information or other events can often explain a revision of testimony." *Id.* "[I]n applying this rule, it is critical that there be no 'satisfactory explanation'" before the Court disregards a party's affidavit. *Id.* When there is no explanation for the changed testimony, this alone "justif[ies] the disregard of the statement." *Capalbo v. Kris-Way Truck Leasing, Inc.*, 821 F. Supp. 2d 397, 410 n.68 (D. Me. 2010).

Plaintiff argues the affidavit is not inconsistent with his deposition testimony because he was not asked about any other telephone conversations during the deposition. He also cites a text message from Defendant Slack in which she references a discussion Plaintiff maintains is not reflected in the transcripts of the two August 14 calls. Plaintiff

8

contends the text message supports his contention that he had a third telephone call with Defendant Slack in which she made the representation.

Plaintiff unequivocally testified that Defendant Slack made the representation on two occasions: once during a telephone call and once during the in-person interview. During his deposition, Plaintiff described two telephone calls with Defendant Slack, both of which were recorded. When Defendants' counsel then asked whether Defendant Slack made the representation during "those phone conversations you described to me," Plaintiff answered "correct." Plaintiff's answer is not ambiguous. Plaintiff testified that Defendant Slack made the representation during one of the two phone calls he identified during the deposition.

Plaintiff's assertion in his affidavit that Defendant Slack made the representation during a later, unrecorded telephone conversation is contrary to his deposition testimony and does not constitute "a satisfactory explanation for why [his] testimony changed." *Hernandez-Loring*, 233 F.3d at 54. That is, Plaintiff's claim that defense counsel did not ask about other phone calls does not constitute a satisfactory explanation. *Escribano-Reyes v. Professional Hepa Certificate Corp.*, 817 F.3d 380, 387 (1st Cir. 2016) (stating Plaintiff's "insistence that evidence he needed to support his opposition to summary judgment was unavailable because defense counsel never asked about it during [Plaintiff's] deposition is meritless."). Plaintiff's contention is further undermined by the fact that his counsel "was present at the deposition[] and had the opportunity to clarify any incorrect impression." *See, e.g., Colantuoni*, 44 F.3d at 5.

Plaintiff's explanation that a later text message from Defendant Slack demonstrates that he and Defendant Slack had a subsequent telephone conversation in which Defendant Slack made the representation also fails. Again, regardless of whether they had more than two telephone conversations, Plaintiff testified in his deposition that Defendant Slack made the representation during one of the two conversations he described during the deposition.

Furthermore, Plaintiff's text message explanation is not supported by the record. According to Plaintiff, on August 21, 2017, in response to a text message from Plaintiff, Defendant Slack sent the following text message:

> Some of what you said the other day is haunting me – you worried that the story would be the end of you. You have a wife and family and life far beyond va so nothing is the end of you.

(Pl. Decl. ¶ 6, Exhibit 1.)

Plaintiff contends the text message demonstrates that another phone conversation occurred because the recorded calls do not include the references Defendant makes in the text message. The transcripts of the recorded phone conversations, however, reflect that on the first call, Plaintiff said, "you can destroy me," and "this could be the end of me." (Transcript at 4, 9, ECF No. 206-3), and that during the second call, Plaintiff mentioned his wife several times. (Transcript at 31, 34, 45, ECF No. 206-4.) The text message is not a "satisfactory explanation" for the change in testimony. *Hernandez-Loring*, 233 F.3d at 54.

The First Circuit explained that the rule that precludes a party from generating a factual dispute by filing an affidavit that contradicts the party's prior testimony is in part, "a matter of policy: if prior statements under oath could be disavowed at will after a motion

10

is made, the other side would be faced with a constantly moving target and summary dispositions made almost impossible." *Id.*  The policy is sound, and the rule applies here. I disregard Plaintiff's assertion in his affidavit that in a telephone call he did not describe during his deposition, Defendant Slack represented that she would not publish the location of his employment.  The record, therefore, lacks evidence to support Plaintiff's claim that Defendant Slack made the representation during a telephone call before the in-person interview.

### 2. In-person Interview

The next issue is whether Plaintiff can sustain his misrepresentation claim based on Defendant Slack's alleged representation at the in-person interview.  Defendants, relying on Plaintiff's deposition testimony, argue that Plaintiff cannot establish an essential element of a misrepresentation claim – that he reasonably relied upon Defendant Slack's representation.  Plaintiff cites his affidavit to counter Defendants' argument.

In his amended complaint, Plaintiff alleged in relevant part:

57. Franchini agreed to the interview subject to the condition, inter alia, that Gannett/Slack not identify the location of his then-current employment.

58.  Gannett/Slack represented and committed to Franchini in advance of the interview that the location of his then-current employment would not be identified in the resulting article.

59. Same was re-confirmed during the interview itself when Franchini became alarmed that Slack had in her possession, during the interview, a copy of his Massachusetts licensure application, a document which Franchini believed to be confidential and privileged, and with respect to which Slack refused to disclose how she obtained same.

11

Plaintiff and Defendants' counsel engaged in the following exchange during Plaintiff's deposition:

> Q. [D]id [Defendant Slack] confirm this promise that you alleged not to disclose the location of your practice when you became alarmed, as it says in paragraph 59 of your amended complaint, that she had a copy of your Massachusetts licensure application?
>
>   [Plaintiff's counsel objects to form of the question.]
>
> A. I'll be honest with you, I was alarmed that she had my Mass. license. I was also concerned that she was promising, but I had no faith in her that she was going to put the – she had my Massachusetts license. How could I trust the fact that she's going to not reveal my location at work?
>
> It falls in the fact that she's already not to be trusted by having that document and her saying, "I have my ways." That put me into an issue of concern at that point that anything I was saying or anything she promises would be false. That's the ---
>
> Q. Okay.
>
> A. That is – that is my statement, and I'm not going to change it.
>
> Q. So you didn't –
>
> A. That is the statement.
>
> Q. Okay. All right. So you didn't believe her when she said she wasn't going to disclose it?
>
> A. No, of course not. And she did. She disclosed it. She put the arrow and the magnifier, so she did exactly the opposite of what she said she was going to do.

(Pl. Dep. 119:10 – 120:20.)

As the exchange reveals, Plaintiff testified, consistent with his allegation in the amended complaint, that Defendant Slack made the in-person representation when Plaintiff learned, during the interview, that she had his professional license application. In his

12

affidavit, Plaintiff asserts that Defendant Slack made the representation before the interview and disclosed the license application when the interview was near completion and when it was "too late to rectify the situation." (Pl.'s Decl. ¶¶ 7-9.)

Plaintiff's declaration contradicts his deposition testimony in a material way. If Defendant Slack made the representation at the start of the interview, Plaintiff arguably could establish that he reasonably relied on the representation when he agreed to the interview. If Plaintiff's deposition testimony controls, given that Plaintiff replied "of course not" when asked if he believed Defendant Slack's alleged representation, Plaintiff cannot establish the reliance necessary to sustain a misrepresentation claim.

As explained above, Plaintiff cannot create a disputed issue through a contradictory affidavit without a satisfactory explanation for the contradiction. Plaintiff has offered no explanation for the contradiction. Instead, he has simply offered contradictory testimony in response to the motion for summary judgment.[4] Given the absence of a satisfactory explanation for the different testimony, the affidavit testimony regarding the timing of the alleged representation is disregarded. *See Capalbo*, 821 F. Supp. 2d at 410 n.68 (D. Me. 2011).

Without Plaintiff's affidavit, the record would not support a finding that Plaintiff reasonably relied on Defendant Slack's alleged representation when he agreed to the

---

[4] The timing of the affidavit is "probative of the fact that the non-movant was merely attempting to create an issue of fact." *Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.*, 447 F.3d 105, 110 (1st Cir. 2006) (disregarding an affidavit because it was filed after summary judgment "solely to create an issue of fact for the purpose of surviving summary judgment."). *See also Reyes v. Professional HEPA Certificate Corp.*, 74 F. Supp. 3d 489, 492 (D.P.R. 2015) (stating "the court may consider timing of the affidavit, as well as the party's explanation for the discrepancies.")

13

interview as he testified at his deposition that he did not believe the representation when made. Accordingly, Defendants are entitled to summary judgment on Plaintiff's negligent and fraudulent misrepresentation claims.

## B. Negligent Misrepresentation

Defendants argue, alternatively, that Plaintiff cannot prevail on his negligent misrepresentation claim because he did not have the necessary special relationship to support such a claim. A special relationship exists when either "the defendant has specialized knowledge or expertise, or there exists a 'special relationship of trust and confidence' between the parties, such that the plaintiff 'has no choice but to place trust in' the defendant's negligent misrepresentation." *Liberty Mut. Ins. Co. v. Harvey Gerstman Associates*, No. 11-cv-4825, 2012 WL 5289606 at *7 (E.D.N.Y. Sept. 13, 2012) (citations omitted).

"Generally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties." *Feldman v. Byrne*, 210 A.D.3d 646, 650 (N.Y. App. Div. 2022). "[A] conventional business relationship, without more, is insufficient to create a fiduciary relationship. Rather, a plaintiff must make a showing of 'special circumstances' that could have transformed the parties' business relationship to a fiduciary one, such as control by one party or the other for the good of the other." *Id*. (Citations omitted).

The mere relationship between a reporter and an interviewee cannot reasonably be viewed as creating a special duty.[5] The record also lacks any evidence to support a finding that the relationship between Defendant Slack and Plaintiff was or became one with a heightened degree of trust to impose a special duty. They had no relationship prior to their first telephone conversation in August 2017. The reason for their interaction also does not suggest a special relationship. During their first telephone call, Defendant Slack informed Plaintiff that she and USA Today were doing a story about the Maine cases in which the Veterans Administration found he provided substandard care. Thereafter, the parties' communications were limited to arranging for and conducting the interview. Plaintiff could not reasonably perceive the relationship as a fiduciary one. The circumstances simply do not support the finding of a special relationship of trust and confidence between Plaintiff and Defendant Slack as contemplated by the applicable law. Plaintiff, therefore, cannot prevail on his claim for negligent misrepresentation.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendants' motion for summary judgment.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

---

[5] In the context of a negligent infliction of emotional distress claim, the First Circuit found there was no duty imposed nor a special relationship between "a journalist and a potential subject." *Veilleux v. National Board. Co,.* 206 F.3d 92, 131 (1st Cir. 2000).

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of May, 2023.